## Harper *against* Blean.

" I give and bequeath unto my wife Elizabeth, the farm and fulling-mill and carding machine upon which I am now living; I also give and bequeath unto her all my personal property; and I give unto her the lot of woodland, known by the name of Ross : also another lot known by the name of Christleibs; and I give and bequeath unto her all my cash, notes and book accounts, with whatsoever is not named that I have any right or claim to either in law or equity." Held, that this devise created an estate in fee simple in the devisee.

ERROR to the common pleas of *Cumberland* county.

The following facts were agreed by the parties to be considered as a special verdict. Andrew Harper, under whom both parties claim title, was in his lifetime, and at the date of his will hereafter mentioned, seised in fee of and in the tract of land and premises mentioned and described in the writ and statement in this suit, together with two other tracts of unimproved woodland in the same township and county, one of which contains forty acres and one hundred and thirty-six perches, and the other contains thirteen acres and eighty perches. The tract for which this suit is brought contains eighty acres, or thereabouts, and is composed of two smaller pieces of land, one of which, containing about five acres and seventy-six perches, the said Andrew acquired by devise under the will of his father, William Harper deceased, upon which a fulling-mill and other improvements were erected; and the residue of the said eighty acres is composed of a tract of seventy-four acres and eighty-four perches, purchased by the said Andrew from Joseph Duncan and wife, by deed dated 13th of May 1825, for the consideration of 1150 dollars. The title of the said Andrew to the two pieces of woodland mentioned above, he acquired by devise under the will of his said father, William Harper. The said Andrew Harper, being so seised, made his last will and testament in writing, duly executed, dated 5th of September 1826, which was proved according to law on the 23d. of January 1827, by which he devised the several tracts of land and premises above mentioned to his wife, Elizabeth Harper, as set forth in the said will as follows:—In the name of God, amen, I, Andrew Harper, of Mifflin township, Cumberland county, and state of Pennsylvania, being sick and weak in body, but of sound mind, memory and understanding (praised be God for it), and considering the certainty of death, and the uncertainty of the time thereof, and to the end that I may be better prepared to leave this world whenever it shall please God to call me hence, do therefore make and declare this my last will and testament in manner following, that is to say, first and principally I commend my soul into the

[Harper v. Blean.]

hands of God, who gave it; my body I commit to the earth, from whence it was taken; I give and bequeath unto my very well beloved wife, Elizabeth, the farm and fulling-mill and carding machines upon which I am now living; I also give and bequeath unto her all my personal property; and I give unto her the lot of woodland known by the name of Ross, also another lot known by the name of Christleibs. And I give and bequeath unto her all my cash, notes and book accounts, *with whatsoever is not named that I have any right or claim to either in law or equity;* and further, I do hereby nominate, constitute and appoint my trusty friend and brother-in-law, John M'Culloch, of West Pennsborough township, the executor of this my will, in witness whereof I have hereunto set my hand and seal, this 5th day of September, Anno Domini 1826.

"ANDREW HARPER, [SEAL]."

The said Elizabeth Harper, after the death of her said husband, made her will in writing, duly executed, dated 6th of October, which after her death was duly proved, by which she devised the same lands and premises to her mother, Sarah M'Culloch. The said Sarah M'Culloch, after the death of the said Elizabeth Harper, by deed dated the 12th of January 1832, for the consideration therein mentioned, granted the tract of land and premises mentioned in the writ and statement in this suit to the defendant, Robert Blean. The defendant was in possession when the writ in this case was served. The said Andrew Harper left no issue, but left two brothers, viz. the plaintiff William Harper, and John Harper; and two sisters, viz. Margaret Harper, and Mary Wallace the wife of Thomas Wallace, all of the whole blood, and the nearest collateral kindred of the said Andrew. The said John Harper, Margaret Harper, and Thomas Wallace and Mary his wife, by their deed dated 30th of March 1832, granted and released all their estate in the land for which this suit is brought to the plaintiff, William Harper, in fee.

Upon these facts the court (Read, President) rendered a judgment for the defendant.

*Biddle* and *Penrose,* for plaintiff in error, cited, 4 *Kent's Com.* 537, 540; Steel *v.* Thompson, 14 *Serg. & Rawle* 90; 1 *Roberts on Wills* 413; 2 *Fon.* 335; Clayton *v.* Clayton, 3 *Binn.* 484.

*Carothers,* for defendant in error, cited, Caldwell *v.* Ferguson, 2 *Yeates* 380; Morison *v.* Semple, 6 *Binn.* 94; Rossetter *v.* Simmons, 6 *Serg. & Rawle* 456; Campbell *v.* Carson, 12 *Serg. & Rawle* 54.

The opinion of the Court was delivered by

SERGEANT, J.—The testator, by a will in his own handwriting, devised to his wife the farm, fulling-mill and carding machines on which he was then living: he next bequeathed to her all his personal property; and then two lots of ground, describing them. Immediately afterwards, by a sweeping clause, he gives to her "all his

cash, notes and book accounts, with whatsoever is not named that he has any right or claim to either in law or equity;" and ends by appointing an executor. He had no other real estate than that described in the will. He had no issue, but left his wife surviving. He left also brothers and sisters, in whose right the plaintiff claims in this ejectment. And the question is, whether the reversion in fee of the farm and fulling-mill passed to the widow, who is since deceased, her title being vested in the defendant.

Under decisions which cannot now be judicially departed from, however often regretted by enlightened judges as defeating the intention of the testator, the first devise to the wife, being by words which denote the locality of the property, and not the quantity of interest, conveyed only a life estate. But that the last devising clause was thrown in for the express purpose of comprehending every thing which he might previously have omitted, and with the design of making his wife universal devisee and legatee of all that he owned or possessed, I think is apparent; and in the construction of wills, the intent of the testator is to be carried into effect if no rule of law be thereby infringed. It is objected, that by the bequest of whatsoever was not named that he had any right or claim to either in law or equity, only things *ejusdem generis* as those previously mentioned, that is, cash, notes or book-accounts, passed, and that this clause cannot be extended to real estate. But artificial rules for the interpretation of deeds, contracts and other deliberate instruments, are not applicable to the construction of wills. They never have been so considered at any period of the law. On the contrary, many constructions have been given to words in a will in order to effectuate the intention of the testator, which would not have been permitted in a deed; and the same words have received different constructions. *Cowp.* 299; *Co. Litt.* 204 *a.* In ancient times, if a man devised lands to another *in perpetuum,* or to give and to sell, or in *feodo simplici,* or to him and his assigns for ever: in those cases, says Lord Coke, a fee simple passed by the intent of the devisor. *Co. Litt.* 96. Yet these words would not have been sufficient in deeds. In modern times, words not appropriated to real estate, such as property, interest, effects, and even legacy, have been adjudged sufficient. Another answer to this objection is, that it would render the residuary clause in this will nugatory. For the testator had previously given to his wife "all his personal property," which conveyed all his personal estate of every description, whether consisting of choses in action or in possession. It is, therefore, absolutely necessary, if the residuary clause is to have any operation at all, to refer it to the reversionary interest in his real estate previously devised to his wife, which was the only interest he had of any sort, either real or personal, not previously devised or bequeathed, or as he terms it, "not named." His having before given her an estate for life, in his real estate, is no objection to this construction of the clause. It would be going a great way, says Lord Mansfield, *Cowp.* 308, to lay it

down as a general rule, that when a particular estate is given to a person in one part of the will, and the testator afterwards devises to him in more general terms, he shall not reap any benefit from the devise.   In that case, Hogan *v.* Jackson, *Cowp.* 299, testator gave to his mother his house and lands of G., during her natural life; and after several legacies to others, devised to his mother all the remainder and residue of his *effects*, both real and personal, which he should die possessed of.   It was held that the mother, by the residuary clause, took a fee in the real estate of G.   Chester *v.* Chester, 3 *P. Wms* 56, is a case strongly resembling, in this point, the present.   A, on the marriage of his son B, settled part of his lands on B in tail, and being seised in fee of the reversion of these lands and of other lands in possession, devised all his lands and hereditaments, not otherwise settled or disposed of, and it was held the reversion passed.   In Ridout *v.* Paine, 3 *Atk.* 488, testator gave his wife an estate for life in part of his real estate, and afterwards bequeathed her the residue, &c.   Lord Hardwicke held the residuary clause carried the inheritance ; which was affirmed on error.

Then if a previous devise for life to the object of the testator's bounty does not prevent the devisee from acquiring, by a residuary bequest, the reversion in fee of the same estate, the next question is, whether a bequest of " whatsoever I have any right or claim to in law or equity," will not pass a reversion in real estate, where such appears to be the intent of the devisor.   These words are of a comprehensive description, embracing every thing in respect to which ownership may exist, whether real, personal or mixed.   They are quite as appropriate to real as to personal property.   They are the common terms employed in conveyances of land.   If the words, effects, legacy, have been held sufficient to pass real estate, as in Hogan *v.* Jackson, *Cowp.* 299 ; Brown *v.* Taylor, 1 *Burr.* 270 : surely the words, "whatsoever I have any right or claim to," are much more efficacious.   In Grayson *v.* Atkinson, 1 *Wils.* 333, a devise of all the rest of my goods and chattels, real and personal, movable and immovable, in houses, gardens, tenements (without making use of the word estate, or any words of limitation), were held to give a fee.   In Tilley *v.* Simpson, decided in 1746, cited 2 *Term Rep.* 656, testator devised lands to several persons, and all the rest and residue of his money, goods, chattels and estate whatsoever to his nephew B.   The question was, whether a beneficial interest in a real estate, not before disposed of, would pass to his nephew by the devise. Lord Hardwicke held it would.   He said that where the court had restrained the word estate to carry personal estate only, it had been where it appeared it was the intention of the testator it should be so understood, as where it stood coupled with particular descriptions of parts of the personal estate, as a bequest of all my mortgages, household goods and estate, in which the preceding words are not a full description of the personal estate.   Therefore, when he has used words comprehending all his personal estate, that word will carry a

[Harper v. Blean.]

real estate. The word *whatsoever* is used here, which is the same as if he had said, of whatever kind it be : and if that had been the case, it would most certainly have carried the real estate. The remarks of Lord Hardwicke apply in a very peculiar manner to the devise now in question : the testator, Harper, having employed language as full and comprehensive as that which he says would most certainly carry real estate ; and moreover, the preceding bequest of " all his personal property," is a full description of the personal estate, and therefore the last clause is not to be restrained to personal estate. So in Terril *v*. Page, 1 *Ch. Cas.* 262, where there was a devise of all the rest and residue of my money, goods and chattels, and other estate, the same determination was made. It is true, that in some of the cases, there have been introductory words which are wanting here ; but on investigation it will be found that their influence on devises has not been sufficient to extend the construction when the devising part would not justify it ; and it is probable the same construction would now be given without, that has been made with, them. See 2 *Preston on Est.* 206. Nor is this rule of construction, that the language must be subordinate to the plain intent of the party, confined to wills. In M'Williams *v*. Martin, 12 *Serg. & Rawle* 269, an assignment of all debts, dues or *demands*, whatsoever or wheresoever, real, personal, or mixed, due or owing, or of right belonging to the assignor, by virtue of inheritance, legacies, bonds, notes, book debts or otherwise, or which thereafter might become due, were held to pass real estate.

Judgment affirmed.