# Geyer *et al. versus* Wentzel *et al.*

1. Words in the introductory or other parts of a will indicating an intention of the testator to dispose of his whole estate, although not conclusive that he intends to pass a fee, are always laid hold of in favor of such construction.

2. A will, in German, was, "I make over to my wife my entire movable and immovable property as long as she lives, with this condition, that she shall in her lifetime sell, &c., to no other person, and neither my brothers or sisters or other relations shall have any part therein, and it is my will that my wife after my death all my property, it may have name as it will, shall come into her hands." *Held*, that the wife took a fee.

3. The mere fact that an express estate for life in the same subject had been limited to the same person, is not sufficient to prevent the subsequent words from carrying the fee.

[Geyer *v.* Wentzel.]

March 6th 1871.   Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.   WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Berks county:* Of January Term 1871, No. 450.

This was an amicable action of ejectment for a tavern and five acres of land, in Alsace township, Berks county, in which John Geyer and others, heirs at law of Henry Geyer, deceased, were plaintiffs, and Samuel B. Wentzel, executor, &c., of Sabilla Geyer, deceased, and Albert Schmeck and others, devisees under the will of the said Sabilla Geyer, were defendants.

The action was commenced March 23d 1869, by filing the agreement for the action, and a case stated.

The facts set out in the case were:—

Henry Geyer died in 1837, without issue, leaving his wife Sabilla Geyer to survive him, and brothers and sisters; seised of the premises in controversy and possessed of personal property.   He left a will, proved September 16th 1837, written in the German language.   A correct translation of the clause giving rise to this controversy, is as follows :—

"And that which appertains to my worldly goods and effects consisting of a tavern-house and outbuildings, together with five acres of land, situate in Elsass (Alsace) township, Berks county, state of Pennsylvania, it is my will, and I make over to my beloved wife Sabilla my entire movable and immovable property so long as she lives, yet with this condition, that she shall in her lifetime sell or write over to no other person, and neither my brothers and sisters or other relations shall have any part or participation therein, and further it is my will that my beloved wife Sabilla, after my death all my property it may have name as it will shall come into her hands and lastly I constitute and appoint herewith my beloved wife Sabilla as the carrier-out (executrix) of this my last will and testament and further, it is my will that all the before-mentioned contained in this testament shall be fulfilled after my death."

Sabilla Geyer died in February 1867, having made her will, proved February 18th in the same year ; Samuel Wentzel being appointed the executor, and the other defendants being the devisees and legatees under the will.   The plaintiffs are the heirs at law of Henry Geyer, deceased.

The question submitted by the case for the determination of the court was, whether the said Sabilla Geyer took an estate in fee under the will of the said Henry Geyer, in the real and personal property of the said deceased, or a less estate.   If the court be of the opinion that she took a less estate, then judgment to be entered for the plaintiffs generally.   If the court be of the opinion that she took an estate in fee, then judgment to be entered for the defendants generally.

[Geyer *v.* Wentzel.]

The court (Woodward, P. J.) entered judgment for the defendants, which was assigned for error on the removal of the case to the Supreme Court by the plaintiffs.

*J. M. Linn* and *W. C. Lawson* (with whom was *H. A. Yundt*), for plaintiff in error, cited Mutter's Est., 2 Wright 314; Roberts *v.* Riffin, Barnardiston R. 261; Hogan *v.* Jackson, Cowp. R. 299; Brown *v.* Boyd, 9 W. & S. 123; Harper *v.* Blean, 3 Watts 471; Silknitter's Appeal, 9 Wright 365; Fisher *v.* Herbell, 7 W. & S. 63; Second Ref. Presb. Ch. *v.* Disbrow, 2 P. F. Smith 223; Culbertson *v.* Daly, 7 W. & S. 195; Busby *v.* Busby, 1 Dall. 226; French *v.* McIlhenny, 2 Binn. 19; Wheaton *v.* Andrews, 23 Wend. 452; Goodright *v.* Barron, 11 East 220.

*G. F. Baer* (with whom were *D. Ermentrout, A. S. Sassman* and *E. Shalter*), for defendants in error, referred to Wills Act, April 8th 1833, § 9, Pamph. L. 249, Purd. 1017, pl. 10; Still *v.* Spear, 9 Wright 170; Redfield on Wills 428, 429, 435, 436; Culbertson *v.* Daly, 7 W. & S. 195; Wood *v.* Hills, 7 Harris 515; Schriver *v.* Meyer, Id. 91; Newbold *v.* Boone, 2 P. F. Smith 171; German *v.* German, 3 Casey 116; Stickle's Appeal, 5 Id. 234; Mutter's Est., 2 Wright 314; Stehman *v.* Stehman, 1 Watts 466; Morrison *v.* Semple, 6 Binn. 98; Doughty *v.* Browne, 4 Yeates 179; Jauretche *v.* Proctor, 12 Wright 466; Amelia Smith's Appeal, 11 Harris 11; Rewalt *v.* Ulrich, Id. 388; Foster *v.* Stewart, 6 Id. 24; Dice *v.* Sheffer, 3 W. & S. 419; Hogan *v.* Jackson, 1 Cowper R. 299; Ridout *v.* Paine, 3 Atk. 486; Harper *v.* Blean, 3 Watts 471.

The opinion of the court was delivered, March 20th 1871, by

SHARSWOOD, J.—Besides that the will of Henry Geyer is an instrument inartificially drawn, we have to labor to reach its meaning through the medium of a translation, which, as is well remarked by Cervantes, is like the wrong side of tapestry, where though we can distinguish the figures, they are confused and obscured by ends and threads. It is, however, sufficiently clear, taking the whole will together, that the testator meant to dispose of all his property—not to die intestate as to any part of it. He introduces the clause of disposition with the words, " and what concern my worldly property," and ends it with " all my property, it may have name as it will." In the original the same word is used in both these places, as well as elsewhere. It is derived from a root signifying " to be able," and in its general sense is used as we use " wealth, riches, fortune." It may, therefore, be very well translated " property." The testator appears to have supposed, and for all that appears rightly, that all the

[Geyer v. Wentzel.]

"movables and immovables" he owned, were at and about his tavern-stand, and the five acres of land connected therewith. Nevertheless, his entire fortune there—his fee simple in the immovables, and his absolute property in the movables—he meant to dispose of. There is not a word from the beginning to the end which militates against this view. This, to be sure, is never a conclusive argument in favor of the construction which passes the fee, but the courts have invariably laid hold of introductory or other words indicating such an intention as they do, of every other circumstance in a will which may help to guide their judgment to the true construction of it.

The testator here having given an express estate for life to his wife, in his "entire movable and immovable property," with a condition in restraint of her power of alienation during her life, and a declaration that neither his brothers and sisters, or other relations, shall have any part or participation "therein"—that is, grammatically, "in his movable and immovable property"—adds this, it will be observed, expressly by way of further disposition: "And further, it is my will that my beloved wife Sybilla, after my death, all my property it may have name as it will, shall come into her hands." It is certainly a well-established canon of construction that effect is to be given to every word of a testator if it can be, consistently with the general scope and intention. It is not easy to attribute any operation to these words, unless it be to carry to the devisee named all that remained undisposed of by the previous clause in the will. If it had been to another person than to the devisee for life, there would not be a loop to hang a doubt upon. It cannot refer to any other subject-matter—other lands or goods not before mentioned—for, as we have seen, the "entire movable and immovable property" had been before given. If it does not mean some remaining interest in that property, it means nothing. The expression "shall come into her hands," evidently intends full ownership. It cannot signify mere possession, for the prior gift of the life estate to the wife had secured that. Both German and English lexicographers concur in giving power, control or ownership as one of the meanings of the word "hand," especially in the plural. "Behold, as the clay is in the potter's hand, so are ye in mine hand, O house of Israel:" Jer. xviii. 6. The word "mortmain"—*mortua manu*—is a striking illustration of it. The Germans have the same law term translated into their language, "*die todte hand.*" Indeed, it seems quite plain that the testator had this very interest after the life estate in his mind, and being at a loss what to call it—reversion, residue or remainder at the time of making the will, it could not be—he therefore added, literally translated, "it may have name as it will;" as if he had said, "I have already given all my movable and immovable property to my wife as long as she lives, and so that she cannot alienate it during

[Geyer *v.* Wentzel.]

that time, now all that remains, whatever you may call it in law, that I also give to her." Judging from the use of the word "vermoegen" in this will alone, I should certainly have no difficulty in considering it as equivalent to "estate" in English, and to refer not to the things movable or immovable, land or goods, which constitute the subject-matter of property, but to the interest or right of the proprietor in them. Supposing this, however, not to be so, we have the rule of construction prescribed to us by the legislature, in the 9th section of the Act of April 8th 1833, Pamph. L. 250: "All devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or of perpetuity, unless it appear by devise over, or by words of limitation or otherwise in the will, that the testator intended to devise a less estate."

Is then the mere fact that an express estate for life in the same subject-matter had been previously limited to the same person, a sufficient indication of intention to prevent the subsequent words from carrying the fee? "It would be going a great way indeed," said Lord Mansfield, "to lay it down as a general rule, that when a particular estate is given to a person in one part of a will, and the testator afterwards devises to him in more general words, that he shall not reap any benefit of such residuary devise. Indeed, as to this objection, the case of Ridout *v.* Paine, 3 Atk. 486, is exactly in point:" 'Hogan *v.* Jackson, Cowp. 299. To the same effect are our own cases of Harper *v.* Bean, 3 Watts 471, and Brown *v.* Boyd, 9 W. & S. 123.

Judgment affirmed.