# CRAIG v. ROWLAND.

WILLS; REVERSION; RESIDUARY DEVISE; REMAINDERS; CHILD
IN VENTRE SA MERE.

1. When, after the creation of a life estate by devise, there is a limitation over to the children of the life tenant and their descendants surviving at the termination of the life estate, in default of which, to the testator's right heirs, the reversion retained will descend to the testator's heirs unless otherwise disposed of.

2. A residuary devise of all of the rest, residue and remainder of the testator's estate, real, personal and mixed, will include such a reversion.

3. A child en ventre sa mere is deemed to be in esse, for the purpose of taking a remainder, or any other estate or interest which is for his benefit, whether by descent, devise or distribution.

4. Where a devise is, that if one of two joint devisees for life shall marry and die leaving lawful issue of such marriage, or lawful descendants of such children, and such issue or their descendants shall be in being at the time of the death of the survivor of the devisees for life, such issue and children and their heirs shall take in fee simple, the remainder to such issue or children vests absolutely on the birth, or coming into being so as to enable it to take, of one of such children, with a liability to open and let in any after born child or children.

5. And after such a remainder becomes vested, it cannot be affected or disposed of by any act of the life tenant or residuary devisee.

No. 604. Submitted December 4, 1896. Decided March 2, 1897.

HEARING on an appeal by the plaintiffs from a judgment on a verdict directed by the trial court in an action of ejectment. *Reversed.*

The COURT in its opinion stated the case as follows:

This is an action of ejectment brought to recover all of square [No. 747, in the city of Washington, in the District of Columbia, and in which square the plaintiffs claim the fee simple estate, and of which they were heretofore, to wit, on the 3d of January, 1876, lawfully possessed, when the

defendant, who is now in the actual occupation theref, entered the same and unlawfully ejected the plaintiffs therefrom, and unjustly detains the same. The plaintiffs also claim for mesne profits to the amount of $12,000.

The defendant pleaded the general issue of not guilty, and upon trial the verdict of the jury, by the direction of the court, was for the defendant. A bill of exception was taken by the plaintiffs, and the case has been brought to this court for review. The principal question in the case is as to the true construction of the will of John A. Wilson, deceased, and the rights of the plaintiffs thereunder.

John A. Wilson died in this District in 1841, leaving a last will and testament, duly executed to pass real estate and which was duly admitted to probate. He left no lineal descendants, but he left two sisters surviving him, as his only heirs-at-law, Mrs. Burgess and Mrs. Burche. Mrs. Burgess died in 1843, intestate, leaving Dr. John E. Craig, her only child and heir-at-law. The plaintiffs are the children of Dr. John E. Craig, who died in 1874.

The testator, John A. Wilson, by the first clause in his will, devised as follows:

"First. I give, bequeath and devise to my sister, Mrs. Henrietta Burgess, and her son, Dr. John E. Craig, as joint tenants during their joint lives, and the life of the survivor of them, the lands and premises on which I now reside, called 'Cazanova,' including all my estate and interest in all the lands now enclosed by me lying in the city of Washington between I street north and the northern boundary line of the said city, and between Second and Third streets east, and if the said John E. Craig shall hereafter marry and die, leaving lawful issue of such marriage or marriages, or the lawful descendants of such children, and such lawful issue, or their lawful children shall be in being at the time of the death of the survivor of the said John E. Craig and Henrietta Burgess, then I give, bequeath and devise to such issue and children, the said lands and premises to .

them, and their heirs in fee simple, but if the said John E. Craig shall die without having been married, and without leaving such lawful issue surviving him, then the said lands and premises to go to my right heirs."

This clause was followed by certain other bequests to Mrs. Burgess and her son, Dr. John E. Craig, and the testator concluded such devises and bequests, by declaring that "the foregoing bequests and devises to the said Henrietta Burgess and John E. Craig are to be in full of and in lieu of all claims they or either of them have or may have in any manner or form, whether as heirs-at-law, or otherwise, upon my estate, or any part thereof, and to be carried into effect only upon the condition of their and each of them releasing all claims and demands as aforesaid."

The will then contains several devises and bequests to other persons, and concludes with a residuary clause, whereby the testator declared, that "the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath, subject to the charges hereinbefore contained, and not otherwise, to my sister, Susan M. Burche, her heirs and assigns, saving and excepting therefrom the leasehold estate," &c.

It is shown that Dr. John E. Craig was married in 1847, and the dates of the births of his several children, the plaintiffs in this case, are as follows: Rosa Craig (now Rosa Cover), November 20, 1848; Robert Craig, July 27, 1850; Clarence Craig, October 15, 1852; Casper L. Craig, December 11, 1855, and Lauretta Craig (now Lauretta Boyd), October 10, 1858. All these children survived their father, who died, as we have before stated, in 1874, and they are all still living and plaintiffs in this case.

On October 21, 1848, just one month prior to the birth of the first child of Dr. John E. Craig, Mrs. Susan M. Burche, by deed of bargain and sale, conveyed to Dr. John E. Craig, his heirs and assigns, all her right, title, claim and interest, of whatever nature or kind, "whether in possession, rever-

sion or remainder, or as heir or devisee of John A. Wilson, deceased," in and to all the land and premises devised to Henrietta Burgess and John E. Craig, and the survivor of them, &c., by the last will and testament of the said John A. Wilson, deceased, &c. And on December 1, 1848, Dr. John E. Craig and wife, by deed of bargain and sale, with covenant for warranty, conveyed the same lands and tenements described in the deed from Mrs. Burche to Samuel H. Laughlin, and by mesne conveyances the property has come to the possession of the defendant, James H. Rowland. There is no pretence that there were real assets of the estate of John E. Craig that descended to his heirs that would make his children liable on the covenant for warranty in his deed to Laughlin.

*Mr. George E. Hamilton* and *Mr. M. J. Colbert* for the appellants:

1. Under the will of said John A. Wilson the plaintiffs in this case took a contingent remainder in fee, which became vested in them upon the death of their father, the said John E. Craig. Dr. Craig took only a life estate under the will of John A. Wilson, unless by the operation of the rule in Shelley's Case he took an estate tail. The rule in Shelley's Case has no application to the devise in question. The determination or construction to be placed upon the words "lawful issue," in the devise, will show the correctness of the contention now made by us. If these words are construed to be words of limitation, the rule applies, and an estate in fee-tail was vested in Craig. If, on the other hand, it is held that these are words of purchase, the contention of the plaintiff is correct, and Craig took but a life estate, with a remainder in fee to his issue.

Without entering upon a discussion of the earlier cases, involving the application of the celebrated rule of property, the following propositions are established by the current of

the later decisions of the courts of this country, both State and Federal:

(1) In the case of a devise to " A " for life with limitation over to the heirs of his body, the word "heirs" will be construed as a word of limitation, unless the evidence of a clear and unequivocal intention to the contrary on the part of the testator appears from the terms or context of the will.

(2) In case of a devise to "A" for life with a limitation over to his children, the word "children" will be construed as a word of purchase, unless from the will a contrary intention is clearly expressed.

(3) In case of a devise to "A" for life, with limitation over to his issue, the word "issue" is neither, *ex vi termini*, a word of limitation or of purchase, and becomes one or the other according to the intention of the testator, to be gathered from the context of the will.

(4) The presumptions are in favor of interpreting the word issue as a synonym of children, and of construing it as a word of purchase; and where an estate is devised to "A" for life, with the remainder to his issue, with words of limitation superadded, the word "issue" will in that case be construed as a word of purchase. *Bowers* v. *Porter,* 4 Pick. 198; *Haley* v. *Boston,* 108 Mass. 576; *Horn* v. *Lythe,* 4 H. & J. 435; *Lyles* v. *Diggs,* 6 H. & J. 373; *Stump* v. *Jordan,* 44 Md. 630; *Shreve* v. *Shreve,* 43 Md. 399; *Timanus* v. *Dugan,* 46 Md. 414. In the will in controversy the property is devised to Craig for life, remainder over at his death to his lawful issue, with words of limitation superadded, thus bringing the case at bar clearly within the rule established by the authorities above cited.

Not only is the word issue used by the testator in framing the first limitation over, but when in search of an alternative expression, he is careful to employ the word children, and not the word heirs, and when in the same paragraph or sentence, a further limitation to the offspring of Craig's issue is made, the testator discards both "issue" and "child-

ren," and uses, with professional accuracy, the word heirs. Thus from the context it clearly appears that the testator, knowing the technical meaning of the terms employed, so used them as to make plainly evident his intention to constitute the issue of Craig the stock or terminus for the succession to take its course from. This contention is fully sustained by the Supreme Court in *Daniel* v. *Whartenby*, 17 Wall. 663.

2. Under the devise in question the life estate of Craig never did, nor could have, become merged in or with the reversion, so as to defeat the contingent remainder in the plaintiffs. The defendant's theory, which seems to have been adopted by the court below, is that the reversion in said property at the death of John A. Wilson, descended to Henrietta Burgess and Susan M. Burche, his only heirs-at-law, and was acquired, one moiety thereof by John E. Craig, through the death of Henrietta Burgess in 1844, who died leaving said Craig as her only heir, and the other moiety thereof by conveyance from Susan M. Burche in 1850, and that by the union in Craig of the life estate and reversion, the intervening contingent remainder, limited to the issue of Craig, was destroyed by the operation of the doctrine of merger. This position seems to us to be altogether untenable. At the time of the death of John A. Wilson there was in him neither a reversion, nor an estate in reversion, but only the possibility of a reversion, or what is called a reverter. The life estate under the will was vested jointly in Dr. Craig and Mrs. Burgess, and to the survivor of them; a contingent fee-simple estate had been granted to the children or lawful issue of said Craig, and the reversion in said Wilson, or his heirs-at-law, was purely a theoretical estate, and one which could not be the subject of conveyance. Mrs. Burgess could not have acquired even this possibility of a reversion, for the reason that she had released and barred all claim upon the estate of Wilson, either as heir-at-law or otherwise, in taking as devisee and legatee under said will.

There is no proof in the record that Dr. Craig was the only heir-at-law of Mrs. Burgess, or that Mrs. Burgess died intestate. Susan M. Burche, if she took anything, took only that possibility of a reversion which would terminate upon the death of Craig with children, or issue of said children, living at the time of his death. The deed from Susan M. Burche to John E. Craig, even if there was in her more than a possibility of a reversion, was insufficient and incapable of transferring a contingent future interest, it being only a deed of bargain and sale. *Dennett* v. *Dennett*, 40 N. H. 498; *Rogers* v. *Insurance Co.*, 9 Wend. 625; *Chrisfield* v. *Storr*, 36 Md. 141; 19 Am. & Eng. Encyc. L. 1062 *et seq.*, where the authorities are collected which very thoroughly establish the doctrine that a deed of bargain and sale is incapable of transferring a contingent future interest, or to bar a contingent remainder.

3. The deed from Burche to Craig was not recorded within six months after its execution, and it thereby became invalid and inoperative as to the plaintiffs. Act of Maryland, 1766, Ch. 14, Sec. 2. At the time of the record of said deed on June 1, 1850, Robert Craig, the oldest son, but not the oldest child, was in being. *Chrisfield* v. *Storr*, 36 Md. 141–144. And it does not appear anywhere in the record that the said deed from Susan M. Burche was executed prior to the birth of issue to said Craig.

4. In accepting the devises and bequests contained in paragraphs or items one, two and three of said will, John E. Craig released all claim which he had, or might have, " in any manner or form; whether as heir-at-law or otherwise," to and upon the estate of said Wilson; because the several estates, to wit, the life estate to Craig, the remainder to Craig's issue, and the reversion, were raised, if not created, by the same instrument or will. 1 Wash. on Real Property, 201; *Chrisfield* v. *Storr*, 36 Md. 141.

5. The devise to Craig for life, and at his death to other heirs in fee simple, disposed of the entire estate, and left

nothing in the testator, or his heirs-at-law, except the possibility of a reversion, which being no estate could not call into effect the doctrine of merger. Preston on Conveyances, 55; *Daniel* v. *Whartenby*, 17 Wall. 639. The doctrine of merger is not favored by the policy of the law, and will never be enforced when by its application or enforcement the evident intention of the testator would be defeated. *Simonton* v. *Gray*, 34 Me. 50. The ruling of the court below was *pro forma*, and in pursuance of the decisions of the Supreme Court of the District in *Craig* v. *Warner*, 5 Mack. 460, in which case was involved the construction of the same will. We submit that the decision referred to, so far as it relates to the question of merger, is not supported by the English authorities relied on by that court, and is entirely opposed to the position and decisions of the American courts upon this doctrine of merger.

*Messrs. Edwards & Barnard* and *Mr. James G. Payne* for the appellee:

1. The effect of the conveyance from Mrs. Burche, the heir holding title to one-half of the reversion, to Dr. Craig, the life tenant and heir to the other one-half, before any title had vested by the terms of the will in any of the plaintiffs, the contingent devisees, was to unite in Dr. Craig the whole title in reversion in fee; and the effect of this was to "drown out" the life estate, and with it the "contingent remainder."

It is claimed that merger would not occur, by reason of Dr. Craig being a devisee of the life estate, under the exceptions to the rule as laid down in the text books. There can be, however, no question that the said life estate which had survived to him on the death of his mother, and the title in reversion to which he had succeeded as heir of his mother, and as grantee of his aunt, Mrs. Burche, by his deed to Samuel H. Laughlin, united in the latter, making a complete estate in fee simple—one entire estate incapable

'of being separated to let in a contingent remainder. This proposition assumes that the devise to the "right heirs" of the testator, as well as the devise to the prospective issue of Dr. Craig, were both contingent; or that these provisions of the will created a contingent remainder with a double aspect; leaving the title in reversion (the same not being included in the residuary devise), undisposed of, and which, at the testator's death, vested in his sisters.

Whenever a particular estate and a remainder meet in one and the same person at the same time, the former is merged in the latter, the whole becoming one estate. The particular estate is effectually destroyed by a merger. If, therefore, the particular tenant acquires the reversion, without a vested intervening estate, the intervening contingent remainder will be defeated. This will happen whether the reversion be acquired by descent or by purchase, except in one single case of descent, where the tenant takes from the testator, by devise, the particular estate, and, by descent, the reversion. No merger would result in that case, as it would nullify the expressed intention of the testator of giving the contingent remainder to some other person not his heir. But if the particular tenant in case of such devise subsequently acquires the reversion, by descent, from the testator's heir, a merger will result as in any other case, and the contingent remainder will be defeated. Tiedeman on Real Property, 421; *Webster* v. *Gilman*, 1 Story, U. S. 499; *Boykin* v. *Ancrum*, 28 S. Car. 486; *Cary* v. *Warner*, 63 Maine, 571; *Bennett* v. *M. E. Church*, 66 Md. 38; Fearne on Cont. Remainders, 341; 4 Kent. Comm. 99; 15 Am. & Eng. Ency. L. 313; *Bennett* v. *Morris*, 5 Rawle, 8; 2 Wash. on Real Estate, 638.

2. Another view of this case is suggested by the point made by counsel for plaintiffs, wherein they insist that no title to the property in question could have vested in Mrs. Burgess or Dr. Craig, other than the life estate expressly devised, because they say that such was to be in full of all

claim "as heirs-at-law or otherwise," against the estate of said testator. If this view should be taken by the court, (although we think the court in *Craig* v. *Warner*, 5 Mack. 470, was correct in holding a different opinion), then where was the fee pending the happening of the contingencies? We think it vested in Mrs. Burche, under the residuary clause of the will; and if so, it passed to Dr. Craig, and thence to Mr. Laughlin, before the contingent devise vested, and was thus consolidated with the life estate, and made a complete title in fee.

3. On the theory that one of the plaintiffs was in being, that is, a child in its mother's womb, at the date of the deed from Susan M. Burch to John E. Craig, it may be important to consider the question as to when the contingent remainder provided in the first clause of the will of John A. Wilson would have vested; that is, at what moment of time was it the intention of said Wilson to have the title vest in the child or children of said Craig? We apprehend that the statute of 10–11 William III, chap. 16, is in force in this District; and, if the contingent remainderman was *en ventre sa mere*, no question could arise as to the vesting of the title on the birth of such child, provided there was no other fact to prevent it, notwithstanding the common law rule to the contrary previous to the said statute. Compiled Statutes D. C., p. 195, Sec. 9.

Under the devise in the present case it seems clear that the "right heirs" could not take as devisees until the death of John E. Craig, or at least until it was absolutely certain that he could not leave children, or their issue, surviving him. The testator clearly intended that the title should remain as a reversion in his heirs by descent during the life of Dr. Craig, or the survivor of the life tenants, and that then the will should operate for the first time to vest the remainder. There is no remainderman mentioned by name, and the class described who shall take, cannot be definitely ascertained until the moment the life estate

determines; so that whether the children of Dr. Craig would have ever become vested with this title depended upon two contingencies: First, whether they answered the description as required by the testator; and second, whether they should be in being and surviving at the death of the survivor of the life tenants. So that the question whether they took a vested title or not, depended upon whether they should outlive the survivor of the life tenants, and not the question simply that the possession might never vest in them because of such failure to survive the life tenants.

In order that a remainder may vest in interest, not only must it be capable of taking effect in possession at any moment the possession becomes vacant, but there must also be some certain and determinate person *in esse*, who answers the description of the remainderman, at some time during the continuance of the particular estate, and not merely at its determination. *Robinson* v. *Wilson*, 38 N. H. 48; *Colby* v. *Duncan*, 139 Mass. 398; *Alverson* v. *Randall*, 13 R. I. 71; *Richardson* v. *Wheatland*, 7 Metc. 169.

There must be some persons *in esse*, answering to the description during the continuance of the particular estate, before the title can vest during the existence of the particular estate; and in every case where the will provides that the remainderman shall be such children as may be surviving at the time of the death of the life tenant, it is impossible to have such persons known and determined, during the existence of the particular estate. *Paul* v. *Frierson*, 21 Fla. 529; *Roundtree* v. *Roundtree*, 26 S. C. 450; *Olney* v. *Hull*, 21 Pick. 311; *Woelpper's Appeal*, 116 Penn. St. 562; Gray on Perpetuities, Secs. 107, 108; *McBride* v. *Smyth*, 54 Penn. St. 245.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

Upon the devise for life in joint tenancy to Mrs. Burgess and her son, with limitation in fee to the children or lawful

descendants of the children of the son, no question is presented of the application of the Rule in Shelley's Case. That rule, it is conceded, has no application to this case, and therefore it is not pretended by the defendant that the father, John E. Craig, took under the devise to himself and his mother more than a life estate in the property devised. *Daniel* v. *Whartenby,* 17 Wall. 639. Upon the death of Mrs. Burgess in 1843, John E. Craig, her son and joint devisee for life, became sole tenant for life, and the limitation over to his children and their descendants surviving at the time of the termination of the life estate, presents the plain case of a contingent remainder to the children or descendants surviving; and the limitation over to the right heirs of the testator, in default of persons to take, was simply retaining the reversion, which would descend to the heirs of the testator if not otherwise disposed of. The heirs in such case take by descent and not by devise as purchasers. Sugden's Edition of Gilbert's Uses and Trusts, p. 32; *Godolphin* v. *Abingdon,* 2 Atk. 57; *Counden* v. *Clerk,* Hobart, 29; Fearne, Cont. Rem. 50, 51. When, says Mr. Preston, "the limitation is to the right heirs, *eo nomine,* of the testator, the gift is void and the fee will descend." 2 Prest. on Est. 17; *Parsons* v. *Winslow,* 6 Mass. 178; *Ellis* v. *Page,* 7 Cush. 161.

This being the result of the reservation to the right heirs of the testator, the residuary devise to Mrs. Burche, by which the rest, residue and remainder of the estate of the testator was given to her, embraced this reversion to the right heirs of the testator. It is a settled principle that wherever there is an executory devise or a contingent remainder of real estate, and the freehold or inheritance is not in the meantime disposed of, the freehold or inheritance descends to the testator's heirs-at-law, to abide the event upon which the contingency may terminate. *Purefoy* v. *Rogers,* 2 Wm. Saund. 382, and note (1); *Carter* v. *Barnardiston,* 1 P. Will. 516, 517; *Gore* v. *Gore,* 3 P. Wms. 28; *Stephens* v. *Stephens,* Cas. Temp. Talb. 228; Fearne, Cont. Rem. and Ex. Dev. 537–543. The

cases all seem to agree that a residuary devise, such as we have in the will before us, will include every reversionary interest, however remote, which is undisposed of by the provisions of the will, whether the same be a reversion remaining after an interest created by the will or otherwise. *Brigham* v. *Shattuck,* 10 Pick. 308; *Harper* v. *Blean,* 3 Watts, 471; *Young* v. *Young,* 45 N. Y. 258. In the event of a failure of the remainder to vest, by reason of the default of issue or children of John E. Craig, there could have been no doubt of the right of Mrs. Burche to take under the residuary devise to her; and if so, it is equally clear that she took the reversion subject to the happening of the contingency.

The reversion in the property, reserved by the devise, having passed to Mrs. Burche by the residuary clause of the will, the question is, what was the effect, if any, of her deed of bargain and sale, dated the 21st of October, 1848, to John E. Craig, the surviving devisee for life, upon the contingent remainder limited to the children of Craig, the devisee for life?

It is contended for the defendant that the operation of the deed from Mrs. Burche to Craig was to merge the life estate, then in Craig alone, into the estate of inheritance conveyed by the deed, and thus by the union or coalition of the particular estate and the inheritance the intermediate contingent remainder, dependent upon such particular estate, was destroyed. In this way, it is supposed, the particular life estate was terminated by being merged in the reversion in fee, and consequently there was no longer any particular estate of freehold to support the contingent remainder to the children. For the learning upon this particular question, see the case of *Purefoy* v. *Rogers,* 2 Wm. Saund. 386, 387, and notes. But whether the principle contended for has any application to this case depends upon another consideration.

As we have seen, the deed of bargain and sale from Mrs.

Burche to Craig bears date the 21st of October, 1848, and it was not recorded to give it effect until June 1, 1850. It appears that Rosa Craig, now Rosa Cover, one of the plaintiffs and the eldest of the children of John E. Craig, was born November 20, 1848, just one month after the execution of the deed to her father, and she was, of course, at the date of the deed, *en ventre sa mere*. The next oldest child was born July 27, 1850, within less than two months after the deed was recorded.

Now, it is well settled, both in England and in this country, that a child *en ventre sa mere* is deemed to be *in esse*, for the purpose of taking a remainder, or any other estate or interest which is for his benefit, whether by descent, by devise, or under the statute of distribution. 4 Kent Com. 249. The cases are full to this effect; and an infant *en ventre sa mere*, who by the course and order of nature was *in esse* before the date of the deed, comes clearly within the description of lawful issue or child of John E. Craig. *Reeve* v. *Long*, 1 Salk. 227; *Doe* v. *Clarke*, 2 Hen. Black. 399; *Pearce* v. *Carrington*, L. R. 8 Ch. App. 969; *Crisfield* v. *Storr*, 36 Md. 129, 145. The child being *in esse* and capable of taking the estate, if the estate in remainder vested upon coming into being of the children of John E. Craig, the estate had been changed from a contingent into a vested remainder, before the execution of the deed by Mrs. Burche; and hence was in no manner affected by that deed.

It is argued, however, for the defendant, that the period for the vesting of the estate in remainder was not the coming into existence of a child or children of John E. Craig, but the death of the latter, leaving issue or children, or their descendants, surviving him. But we perceive nothing in the terms of the devise in remainder that requires such construction. The devise should be so construed as to vest the estate at the earliest possible moment, without violation of the manifest intention of the testator. In this case there is nothing on the face of the will to indicate an intention or

purpose on the part of the testator to delay the vesting of the estate in remainder to the time of the termination of the life estate. And in the absence of such plain indication, the rule of construction is, that the estate should be held as vested from the earliest period possible.

The devise is, that if John E. Craig should marry and die, leaving lawful issue of such marriage, or the lawful descendants of such children, and such lawful issue, or their lawful children, shall be in being at the time of the death of the survivor of the devisees for life, then the testator devised to such issue and children, and their heirs, in fee simple, the land and premises; but if John E. Craig should die without leaving such lawful issue surviving him, then the lands to go to the right heirs of the testator. In all the conditions here prescribed to the enjoyment of the estate by the issue or descendants of such issue of the devisee for life, there is nothing that precludes the vesting of such estate during the continuance of the life estate. On the contrary, there is strong reason for adopting the earliest period for vesting that can be done, in cases like the present; for thereby protection is given the interest in remainder, as the devisee for life may be under a temptation to frustrate the will of the testator, as was attempted in this case, by destroy- ing the contingent remainder, by getting in and uniting the reversion and life estate in himself.

This question as to the time of vesting of estates devised in remainder was very fully examined by the Supreme Court of the United States in the case of *Doe* v. *Considine*, 6 Wall. 458, which would seem to be entirely conclusive of the question here. The cases therein cited with approval would seem to cover this case to the exclusion of all doubt. In that case it was held that estates in remainder vest at the earliest period possible, unless there be a clear mani- festation of the intention of the testator to the contrary. And in furtherance of this principle, the expression, " upon the decease of A I give and devise the remainder," was con-

strued to relate to the time of the enjoyment of the estate, and not to the time of the vesting in interest.

In 2 Jarman on Wills (5th Am. Ed.), Ch. 25, pp. 406–7, where most of the authorities upon this subject are collated, in the text and the notes, the author says: "It may be stated, as a general rule, that where a testator creates a particular estate, and then goes on to dispose of the ulterior interest, expressly in the event which will determine the prior estate, the words descriptive of such event, occurring in the latter devise, will be construed as referring merely to the period of the determination of the possession or enjoyment under the prior gift, and not as designed to postpone the vesting;" and many examples are given to illustrate the principle.

In the case of *Duffield* v. *Duffield*, 1 Dow. & Cl. 311, in the House of Lords, Best, C. J., said that in the construction of devises of real estate, "it has long been an established rule for the guidance of the court, that all estates are to be holden to be vested, except estates in the devise of which a condition precedent to the vesting is so clearly expressed that the courts cannot treat them as vested without deciding in direct opposition to the terms of the will." And to accomplish this, words of seeming condition are, if possible, held to have only the effect of postponing the right of possession; and if the devise be clearly conditional, the condition will, if possible, be construed as a condition subsequent and not precedent, so as to confer an immediate vested estate, subject to be divested on the happening of the contingency.    Hawkins on Wills, 237.

It is laid down in all the books of authority that the distinction between a vested and a contingent remainder does not depend on the contingency on which it is to vest in possession, but on that on which it is to vest in interest. Hence, Mr. Fearne (Cont. Rem. 215, 216, 217), lays it down as an unquestionable proposition, "that it is not the uncertainty of ever taking effect in possession that makes a

remainder contingent; for to that, every remainder for life or in tail is and must be liable; as the remainderman may die, or die without issue, before the death of the tenant for life.   The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent."

In this case, the question is, whether the remainder to the issue or children, or their descendants, of John E. Craig was contingent until the death of John E. Craig, the devisee for life, or vested on the birth or coming into being, so as to enable it to take, of one of such children, with a liability to open and let in any after born child or children, embraced by the devise in remainder.   This question would seem to be of easy solution, upon the principles we have stated. There being no condition precedent or clearly expressed intention in the devise to prevent the vesting of the estate in the child or children as they came into being, it follows, upon well settled principles, that the remainder limited to the children, or their descendants, of John E. Craig, became a vested remainder in fee in the first child born or that came into being and capable to take, and did not wait for the death of the father; and this remainder thus vested was subject to open and let in the after born children.   And if such child or children and their descendants had all died in the lifetime of John E. Craig, the fee simple estate would have reverted to the heirs of the testator, and formed part of the residue of his estate, and passed under the residuary clause of his will.   *Doe* v. *Considine, supra; Doe* v. *Perryne,* 3 T. Rep. 484, opinion of Buller, J.; *Right* v. *Creber,* 5 B. & Cr. 866; *Doe* v. *Hopkinson,* 5 Q. B. 223; *Carver* v. *Jackson,* 4 Pet. 1, 90.

The estate limited in remainder having been changed or converted from a contingent into a vested remainder, upon coming into being of the first child of the devisee for life,

which happened before the execution of the deed of bargain and sale by Mrs. Burche to the devisee for life, it follows that the estate limited in remainder was in no manner affected by such deed. And as to the deed subsequently made by the devisee for life to Samuel H. Laughlin, that did not affect the estate in remainder, though it professed to convey the estate in fee; but only conveyed such estate as the grantor could lawfully convey, and that was a life estate in the premises.

It follows that the instruction of the court below, directing a verdict for the defendant, was erroneous; and therefore the judgment must be reversed, and a new trial awarded, and it is so ordered.

*Judgment reversed and cause remanded for new trial.*