## Heiserman v. Coldren et al.

*Windolph and Johnstone*, for plaintiff.

*John Hill Byrne*, for defendants.

SCHAEFFER, P. J., October 19, 1951.—This is an action to quiet title and comes before the court on a complaint, an answer containing new matter, a reply and a motion for judgment on the pleadings.

The question involved is whether Emma Heiserman, plaintiff, has a fee simple estate or a life estate in premises Nos. 122-126 Spruce Street, Lititz, Lancaster County, Pa., under the will of Mary E. Kuhn, deceased, which was probated in the office of the Register of Wills of Lancaster County on July 23, 1941. The will provides, inter alia, as follows:

"(8) I give, devise and bequeath to sister Emma Heiserman my two dwellings situated on and known as 124 & 126 Spruce St., Lititz, Pa., as long as she lives, and should she die, the homes to revert to the residue of my estate. The repairs and taxes etc. to be paid by her from the rents of the homes; (9) I give, devise and bequeath to my sister Emma Heiserman all my furniture and automobile; I give, devise and bequeath to my sister Emma Heiserman the rest of my estate, and should she die it shall be reverted to the residue of my estate."

It is admitted that decedent in her will improperly referred to No. 122 Spruce Street as No. 124 Spruce Street.

The will in controversy is inaptly prepared. It was stated at the argument that it was written by testatrix. Its construction is not free from difficulty. However, it shows an intention on the part of the testatrix to dispose of all her estate. In Geyer et al. v. Wentzel et al., 68 Pa. 84, 86, involving a will inartificially drawn, Sharswood, J., said:

"We have to labor to reach its meaning . . . which, as is well remarked by Cervantes, is like the wrong side of tapestry, where though we can distinguish the figures, they are confused and obscured by ends and threads. It is, however, sufficiently clear, taking the whole will together, that the testator meant to dispose of all his property—not to die intestate as to any part of it."

In that case it was decided that the mere fact that an express estate for life in the same subject had been limited to the same person, is not sufficient to prevent the subsequent words from carrying the fee.

It is a well established principle of law that one who writes a will is presumed to intend to dispose of all his estate and not to die intestate as to any portion thereof. If possible to do so, a will must be construed to avoid an intestacy: Carmany Estate, 357 Pa. 296; Butler Estate, 364 Pa. 279; Rzedzianowski's Estate, 148 Pa. Superior Ct. 361.

Paragraph 8 of the will standing by itself evidently would create only a life estate. It must be considered, however, in conjunction with the unnumbered paragraph following paragraph 9 to determine whether the latter paragraph is a remainder clause wherein Emma Heiserman was given, devised and bequeathed the residue of the estate.

In Bricker's Estate, 335 Pa. 300, it was decided that a residuary clause in a will is one which covers all of the estate not disposed of after providing for debts and particular legacies and devises, and no technical mode of expression is necessary to constitute such a clause. It was also held that the word "balance" is the vernacular for the legal phrase "rest, residue and remainder" and may be construed to have such meaning. In Suttner Estate, 348 Pa. 159, it was decided that the words "residue and remainder" in a will are technical words of a definite meaning and are to be

construed according to their legal or definite effect, unless it is apparent that testator has misused them, or has given them a meaning different from their fixed technical sense, in which event effect must be given to testator's intent, gathered from the will as a whole. See also Rettew's Estate, 142 Pa. Superior Ct. 335; Estate of Isabella L. Sweitzer, Decd., 142 Pa. 541, 548. In Casey v. Genter et al., 276 Mass. 165, 176 N. E. 782, it was decided that the word "rest" is sufficient to create a residuary clause. In Warner v. Willard, 54 Conn. 470, 9 Atl. 136, it was decided that a devise of "all the residue of my estate of whatever name or kind", to one who had been given only a life estate in real estate in a preceding clause, enlarges such life estate to a fee.

In Ingham's Estate, 315 Pa. 293, it was held that a general residuary clause disposes of every interest that testator possessed, whether known or unknown, immediate or remote, unless it is manifestly excluded.

The court concludes that testatrix in the instant case in using the word "rest" instead of the usual phrase "rest, residue and remainder" intended to create a residuary clause which would dispose of her entire estate and include any portion thereof overlooked or not effectually or completely disposed of. In Page on Wills, vol. 3, sec. 990, p. 87, it is said:

"A residuary clause passes all of testator's property; and all of his interests in property, not otherwise disposed of effectively, and not excepted from the operation of such clause, pass."

In Conrad's Estate, 341 Pa. 451, a testatrix left her residuary estate to her sister, who was her sole heir at law, for life with remainder to certain charities. The latter became void as the will had been executed only three days prior to testatrix's death. It was held that testatrix's sister became vested with a fee in the entire estate by reason of the merger of the life estate

which she took under the will and the remainder which she took under the intestate law. If the contention of defendants were sustained, Emma Heiserman would take absolutely an undivided one-third interest in the real estate devised to her for life in paragraph 8 of the will of Mary E. Kuhn, deceased, and a life estate in the remaining two-thirds interest therein. Such a conclusion is not justified under the provisions of the will of decedent and it was not so intended by testatrix. In Spangenberg Estate, 359 Pa. 353, it was held that the law will impute to a testator's words such a meaning as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice.

In construing the residuary clause in question consideration must be given to the phrase "and should she die it shall be reverted to the residue of my estate". Practically the same phrase is used in paragraphs 5 and 8 of the will. Evidently testatrix had in mind the contingency of a legatee or devisee predeceasing her and in using the word "revert" in the phrase referred to, she meant "to go to" her general estate to be disposed of in accordance with her will: Smith's Petition, 291 Pa. 129.

And now, October 19, 1951, it is ordered, adjudged and decreed as follows:

1. That judgment is hereby entered in favor of Emma Heiserman, plaintiff, and against Ella Coldren, John A. Uhland, Jr., Margaret U. McIlnay, Ann U. Morton, Rachel Uhland, Mary G. Uhland and Patricia Uhland, defendants, and they are forever barred from asserting any right, title or interest in the following described real estate:

"All that certain lot or piece of land situated on the west side of Spruce Street in the Borough of Lititz, Lancaster County, Pennsylvania, on which are erected a two and one-half story frame, asbestos shingled

dwelling house, known as 122 Spruce Street, and a two-story brick dwelling house and garage known as 126 Spruce Street. Containing in front on the west side of said Spruce Street fifty (50) feet and extending in depth of that width two hundred (200) feet to Maple Alley. Bounded on the east by said Spruce Street, on the north by land now or late of George Ochs, on the south by land now or late of Emanuel Hall and on the west by Maple Alley. Being the same premises which Leonard Frederick by his deed of indenture dated March 23, 1889 and recorded in the Recorder's Office of Lancaster County in Deed Book I, Vol. 14, Page 308, granted and conveyed to Mary E. Haines, afterwards Mary E. Kuhn, her heirs and assigns."

2. That this order shall be entered and indexed in the recorder's office of Lancaster County and it shall also be entered and indexed in the prothonotary's office of Lancaster County, in accordance with the Act of June 19, 1913, P. L. 532, sec. 2.