# BRENEMAN *v.* HERDMAN.*

---

JUDGMENTS; FRAUDULENT TRANSFERS; EVIDENCE; ESTATES; LACHES.

1. In a judgment creditors' suit to vacate an alleged fraudulent conveyance of land, and to subject the land to the payment of the judgment, the judgment is conclusive as to the amount of the debt of the judgment debtor.
2. Where in a creditors' suit to set aside a transfer by the debtor to his sister as fraudulent, the complainant testifies he made the last of a

---

*As to participation by creditor in fraudulent intent of debtor which will make a transfer to pay or secure his debt invalid as to other creditors, see note to *Rice* v. *Wood,* 31 L.R.A. 609.

series of loans to the debtor at a time the debtor showed him a letter from his mother, in the presence of a third person who, in testifying for the complainant, fixes the date shortly prior to the date of the transfer, and the debtor admits his indebtedness to the complainant prior to the transfer, and there is no evidence to contradict such testimony, there is sufficient evidence to show that complainant was an existing creditor at the time of the transfer.

3. While a debtor has a right to prefer one creditor over another (following *Merillat* v. *Hensey,* 32 App. D. C. 64), where a debtor, harassed by his creditors, transferred to his sister an interest in land, which was the only property he had, upon little or no consideration, the inevitable consequence of which was to hinder, delay, or defraud his creditors, it must be held that he intended so to do. (Citing § 1120, D. C. Code, 31 Stat. at L. 1368, chap. 854; and following *Barber* v. *Wilds,* 33 App. D. C. 150.)

4. In a creditors' suit to set aside as fraudulent a transfer by a brother to his sister of his undivided one-half interest in land in which their mother had a life estate, it was *held* that the grantee participated in the grantor's intent to hinder and delay his creditors, on a review of the testimony showing, among other things, that the mother, son, and daughter lived together at the time; that the consideration for the transfer was inadequate; that it was made at a time when the brother was harassed by his creditors; that, according to the testimony of the brother, part of the money borrowed from various sources was given to his mother; that the sister knew her brother was in debt; and that the brother frequently spoke to his sister of the complainant; and that the family was in pressing need of money.

5. Where land is devised to executors in trust for the daughter of the testator for life, and upon her death "in trust for any child or children she may have at the time of her decease surviving her, until such child or children respectively attain the age of twenty-one years of age, when the same shall be conveyed by my said executors, or the survivor of them, to such child or to such children, in equal proportions or shares, and his or their heirs; and if my said daughter leave no child, or if, leaving a child or children, it or they die before attaining the age of twenty-one years, unmarried and without leaving a child or children begotten in lawful wedlock, then at the death of the last surviving child of my said daughter, under age and unmarried and without issue as aforesaid, the said property shall be conveyed by my said executors, or the survivor of them, in equal proportions or shares, to such of my other children as may be then living,"—the interests of the life tenant's two children become vested when they attain the age of twenty-one years, and are no longer contingent on surviving their mother, but their right to possession does not begin until their mother's death.

6. A creditor is not guilty of laches in filing a bill to vacate an alleged fraudulent transfer by the debtor to his sister of his undivided interest in land in which they had a vested interest in remainder, subject to a life estate of their mother, where the transfer, absolute on its face, and for a recited consideration of $10,000, and with nothing about it to show that it was not made in good faith, was made and recorded about six years before the complainant brought suit on the debt, but the debtor, about a year prior to the commencement of the suit, united with his sister and his mother in a deed of trust on the land, and where the bill was filed three months after the creditor obtained judgment. (Following *Nelson* v. *Worthington*, 3 App. D. C. 507 and *Tyler* v. *Moses*, 13 App. D. C. 428.)

7. A fraudulent absolute transfer of land will not be allowed to stand as security for a debt due by the grantor to the grantee, where the grantee participated in the fraud.

8. A conveyance fraudulent as to creditors is good as between the grantor and grantee; and a decree in a judgment creditors' suit, vacating a transfer as fraudulent, and directing a sale, should direct the surplus to be paid to the grantee after satisfaction of the judgment.

No. 2072.  Submitted February 11, 1910.  Decided April 5, 1910.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia granting the relief sought in a suit by a judgment creditor to vacate as fraudulent a transfer of an interest in land by the judgment debtor.

*Modified and affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the District of Columbia, declaring null and void, as against appellee, Lyman Herdman, complainant below, three deeds conveying the interest of William W. Breneman, one of the appellants, in certain real estate constituting his only property, to his sister and coappellant, Mary De W. Breneman, on the ground that said deeds were executed to hinder, delay, or defraud appellee, a then existing creditor.

In 1869 William Wilson, the grandfather of the defendants, died in this city, leaving a will, in which certain parcels of ground were devised to his executor to be held in trust for the

benefit, during her lifetime, of Marion V. Breneman, testator's daughter and defendants' mother, and, upon the death of said beneficiary, "in trust for any child or children she may have at the time of her decease surviving her, until such child or children respectively attain the age of twenty-one years, when the same shall be conveyed by my said executors, or the survivor of them, to such child or to such children, in equal proportions or shares, and his or their heirs; and if my said daughter leave no child, or if, leaving a child or children, it or they die before attaining the age of twenty-one years, unmarried and without leaving a child or children begotten in lawful wedlock, then at the death of the last surviving child of my said daughter, under age and unmarried and without issue as aforesaid, the said property shall be conveyed by my said executors, or the survivor of them, in equal proportions or shares, to such of my other children as may be then living," etc.

During 1894 and 1895 the defendants lived with their mother as they had previously done. During that period the defendant, William W. Breneman, borrowed of the complainant sums aggregating more than $2,500. Breneman had borrowed, and was borrowing during that period, sums of money from other parties, and in September, 1895, was hard pressed by his creditors, and had no property save his interest in his grandfather's estate. On the 28th of September, 1895, he executed a deed reciting a consideration of $10,000, "and divers other valuable and good considerations," in which he conveyed his undivided one-half interest in said real estate named in said will, to his sister in fee simple. This deed was recorded on October 1st following. On September 17th, 1896, another deed, reciting the same consideration and conveying the same property, was executed by Breneman to his sister. This deed was followed by still another, dated November 1st, 1897. The second and third deeds were made to correct alleged errors in the first. At the time these deeds were executed, Breneman was more than twenty-one years of age.

By deed dated May 22d, 1900, Marion V. Breneman, Mary De W. Breneman, and William W. Breneman joined in a deed

of trust upon said property, for the purpose of raising $60,000. The larger part of this sum was expended in the erection of an apartment house on the property. Mrs. Breneman died May 29th, 1908.

In 1901 complainant brought suit against Breneman, and on January 7th, 1902, obtained a judgment by default for $2,536.79, with interest and costs. Execution issued thereon, and was returned *nulla bona*. Thereafter, on April 7th, 1902, complainant filed the petition herein, in which he averred that said conveyances were colorable only, and made for the sole purpose of defrauding the creditors of said Breneman and the complainant; that Mary De W. Breneman accepted the conveyances with knowledge of their purpose; and that there is a secret agreement between the grantor and the grantee inconsistent with the terms of said conveyance. The petition closed with the prayer that, subject to said deed of trust, the amount of complainant's judgment be declared to be a lien on the said interest of William W. Breneman in said property, and that, unless said judgment be satisfied on or before a day certain, said interest be sold.

Although answer under oath was expressly waived, each of the defendants so answered. In his answer Breneman admits "that at the time said conveyances were made he was heavily indebted to the complainant; but this defendant avers that at said time by far his largest creditor was the said Mary De W. Breneman, to whom he was indebted in the sum of twelve thousand five hundred dollars ($12,500), which amount had either been loaned to this defendant, or paid out by the said Mary De W. Breneman in cash and on behalf and at the request of this defendant." This answer continued to the effect that said conveyances were made upon a consideration in excess of the value of the property conveyed, in good faith, and without any intent of defrauding other creditors.

The answer of Miss Breneman recites that said deeds were executed and delivered to her "for a good, full, valuable, and adequate consideration;" that at the time she had reason to believe that her brother had other debts, but had no knowledge

"as to the amount or condition of the same;" "that at the time the first of said conveyances was made, the said William W. Breneman was largely indebted to her for cash loaned by her to him, for notes of his which she has indorsed and had been compelled to pay, and for other sums of money which she had expended for him at his request, said amounts aggregating the sum of $12,500." The answer also "denies any knowledge of any attempt on the part of the said William W. Breneman to defraud his other creditors."

Issue was joined and testimony taken. The learned trial justice filed a careful and comprehensive opinion, in which he reached the conclusion "that the financial transactions of this family were all closely connected; and that all three were not only interested therein, but must have known about the same when the debts were created; and that the sister must be held to have had knowledge that would prevent her from accepting a deed from her brother of all his interest, such as a bona fide purchaser could have taken; and that therefore, in equity and good conscience, the said deed, and the two correction deeds following the deed of September 28th, 1895, ought to be set aside, and declared null and void as to the complainant."

*Mr. Charles Cowles Tucker, Mr. J. Miller Kenyon, Mr. Henry B. F. Macfarland,* and *Mr. Phillip H. Walker* for the appellant Mary De W. Breneman.

There was no appearance for the defendant Wm. W. Breneman.

*Mr. Daniel W. O'Donoghue* and *Mr. Arthur A. Alexander* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

In the first assignment of error it is contended that the evidence did not warrant the finding "that the appellee was an

existing creditor of William W. Breneman when the alleged fraudulent conveyance of September 28th, 1895, was made."

As to the extent of Breneman's indebtedness to complainant, the judgment is, of course, conclusive. The only question, therefore, under this assignment of error, is as to when that indebtedness was incurred. The complainant testified to the effect that the last loan made to Breneman was the result of repeated requests, and that it was finally made because of Breneman's representation as to his urgent need for the money. Complainant further testified that, at the time this loan was made, Breneman showed him a letter purporting to have been written by Breneman's mother, who was then at Cape May with Miss Breneman, in which she criticized Breneman for not sending her money. This letter complainant read in the presence of a Mrs. Dawson, in whose house he roomed. Mrs. Dawson testified that she remembered this occasion of Breneman's visit to her house, and that it was about June, 1895. She was enabled to bring to mind the particular visit because of the reading of said letter. Breneman himself testified for the defendants that he owed the complainant in 1895, prior to the execution of the first deed to his sister, and did not attempt to deny that the whole indebtedness was incurred prior to that time. The complainant kept no books, the practice being to require Breneman to give a note for the amount of each loan, which, when due, would be taken up by the giving of another note. We think, however, that the testimony above briefly reviewed, in the absence of anything tending to contradict it, is sufficient to sustain the finding challenged. It is a somewhat significant fact that Breneman, while on the stand, did not deny that he obtained the last loan from the complainant at the time and under the circumstances detailed by the latter.

It is next contended that the court erred in finding that Breneman made said deed of September 28th, 1895, with intent to hinder, delay, or defraud his creditors. This assignment is easily disposed of. The record conclusively shows that at the time he made this conveyance he was harassed by creditors, and that the only property he had in the world was the interest

which he conveyed to his sister. It will appear, in the consideration of the next assignment of error, that said conveyance was made upon little or no consideration, although purporting to have been made upon a fairly adequate consideration. It is apparent, therefore, that he was not in good faith preferring one creditor over others, as he would have had the right to do. *Merillat* v. *Hensey,* 32 App. D. C. 64. But, on the contrary, the inevitable consequences flowing from his acts were to hinder, delay, or defraud his creditors, within the meaning of sec. 1120 of the Code [31 Stat. at L. 1368, chap. 854]. *Barber* v. *Wilds,* 33 App. D. C. 150.

The third assignment of error is closely related to the second, involving, as it does, the finding that Miss Breneman participated in Breneman's intent to hinder, delay, or defraud his creditors. Let us briefly review the testimony bearing upon this point. At the time this conveyance was made, Miss Breneman and her brother occupied their mother's house, and their relations were those usually existing between brother and sister. Miss Breneman was without means other than her joint interest in the property left in trust by her grandfather, and had no income. In her answer she admits that at the time this conveyance was made she had reason to believe that her brother had other debts. Breneman testifies that he told his sister he was borrowing money, but denies that he mentioned complainant's name in that connection. The testimony, however, shows that during the period covered by these loans the family was greatly pressed for money. Breneman himself, in his direct examination, stated that he gave part of the money which he obtained from different sources to his mother; and complainant testifies to an interview which he had with Mrs. Breneman, at her request, shortly after the last loan to Breneman, in the summer of 1895, when Mrs. Breneman endeavored to secure another loan. The complainant then explained to Mrs. Breneman how he came to make loans to her son, and during the interview Miss Breneman came into the room, and remarked that she could not help hearing what had been said, "as she was at the top of the stairs." Miss Breneman admitted being

present at such an interview, and remembered that her mother criticized complainant because "she felt that Mr. Herdman was responsible for his (Breneman's) heavy debts." She testified, however, that this interview occurred "about 1896,—in that neighborhood;" but this statement as to time was made without reference to any other date or event tending in any way to fix the date in her memory.

Taking into consideration the situation of the parties at the time, as disclosed by the testimony, the circumstances surrounding the making of these loans, the testimony of Breneman as to the disposition of the money borrowed, the admission of Miss Breneman that she had reason to believe her brother was in debt, the confidential relations existing between brother and sister, the fact that Breneman frequently spoke to his sister of complainant, and the pressing need of the family for more money, we think clearly justifies the conclusion that, when this conveyance was made, Miss Breneman was fully aware of the extent of her brother's indebtedness to complainant, as indeed she must have been aware of his indebtedness to others.

The learned trial justice in construing said will ruled: "That when the two children arrived at the age of twenty-one years, their interests became vested, and were no longer contingent on surviving their mother;" that "their right to possession, however, did not begin until their mother's death;" that, at the date of said conveyance to his sister, William W. Breneman had a vested title to an undivided interest in said property, subject to his mother's life estate therein. We concur in this construction of the will. It is in evidence that the assessed valuation of said property for the years 1895 and 1896 was $40,755. It is apparent, therefore, that Breneman's one-half interest at the time he executed said deed must have been worth something more than $15,000. What was the consideration for the deed? As above stated, the recited consideration was $10,000 and other valuable and good considerations. Breneman in his answer under oath states that, at the time of said conveyance, he was indebted to his sister in the sum of $12,500, and that the deed was made "in settlement and satisfaction of the amount

due by him." Miss Breneman in her answer under oath states that at time of said conveyances her brother "was largely indebted to her for cash loaned by her to him, for notes of his which she had indorsed and had been compelled to pay, and for other sums of money which she had expended for him at his request, said sums aggregating the sum of $12,500." Accepting her testimony, we find that the only money she had to loan her brother was a small legacy of "between $500 and $600" which she thinks she received in 1894 or 1895. There is no evidence that she paid a dollar on account of her brother's indebtedness until after said deed of trust in 1900, when, out of part of the proceeds of that transaction, she did pay notes bearing her name, her mother's or her brother's, or, in some instances, the names of all three; but the aggregate amount of said notes bearing date prior to the execution of the deed of September 28th was small in comparison with the value of the property conveyed to her.

Having signed or indorsed notes with her brother to the extent of about $4,000 for the purpose of raising money for their joint benefit, Miss Breneman took an absolute deed of property worth four times that amount, knowing that her brother had other creditors whose claims would, in all likelihood, be defeated unless the real character of the conveyance to her should become known. Moreover, it is apparent, as suggested by the learned trial justice, that the only money paid on account of Breneman's obligations was paid out of the proceeds of the very property he conveyed to his sister. In view of Miss Breneman's knowledge of her brother's indebtedness at the time this property was conveyed to her, the fictitious nature of the consideration, her inconsistent and misleading positions with respect to the same, and the other facts and circumstances, constrain us to rule that in taking this deed Miss Breneman was attempting to protect her brother from his creditors. In other words, that she was a party to the intent to hinder and delay them.

It is next urged that the complainant was not entitled to the relief prayed, because of laches. The evidence shows that

Breneman renewed the notes evidencing his indebtedness to complainant several times, and that complainant finally obtained judgment against him in January, 1902. Prior to May, 1900, when Breneman joined in said deed of trust, there was nothing to indicate that said conveyance to Miss Breneman was other than what it purported to be, namely, an absolute deed in good faith and upon a valuable consideration. Hence there was no occasion for haste on the part of complainant. Three months after obtaining judgment he filed his bill. In the circumstances of the case we think complainant was exercising due diligence. *Nelson* v. *Worthington,* 3 App. D. C. 507; *Tyler* v. *Moses,* 13 App. D. C. 428.

It is further contended that the court erred in not decreeing that said deed of September 28, 1895, should stand as security to Miss Breneman for at least one half the amount paid by her on account of her brother's debts. Having been a guilty party to the transfer made with intent to hinder, delay, or defraud her brother's creditors, her rights must be postponed to the rights of those creditors. Equity will not permit such a party, when the real nature of the transfer becomes known, to stand on an equal footing with honest creditors. The fact that there was some consideration for the deed does not affect this conclusion. *Hamilton Nat. Bank* v. *Halsted,* 134 N. Y. 520, 30 Am. St. Rep. 693, 31 N. E. 900; Wait, Fraud, Conv. § 207.

In the last assignment of error it is suggested that the decree, in any event, should direct that any balance remaining after the satisfaction of complainant's demands should be paid to Miss Breneman, as said conveyance to her was at least good as between the parties. We think this point well taken.

As modified the decree will be affirmed, with costs.

*Affirmed.*