Mr. Justice Hagner
delivered the opinion of the Court:
This is a contest between certain legatees of Mrs. Mary C. McDonnell claiming a large part of her personal estate as residuary legatees, on the one hand, and the next of kin of the testatrix on the other, who insist that as to the property thus claimed the testatrix died intestate.
To ascertain whether the testatrix intended to dispose of all her estate not specifically bequeathed under the clause claimed to be residuary, the Court must examine the entire instrument in connection with the surroundings of the testatrix and the nature of her property.
*169 In December, 1879, Thomas McDonnell, her husband, executed his will, which was admitted to probate in this jurisdiction in June, 1882. He died childless, and by his will devised and bequeathed almost his entire estate to his wife for her life, with power to sell the same, in her discretion, for her comfortable maintenance, under certain restrictions. The furniture, with a few exceptions, was bequeathed to her absolutely; and the residue of his estate, after the payment of all the just debts and funeral expenses of. his wife after her death, wTas bequeathed to several relatives in different proportions; and Mrs. McDonnell and L. Marcellus Cox were appointed his executors.
By the first clause he declared:
“I waive and release forever all and any claim or right I may have or possess or which I may hereafter acquire in and to any and all registered bonds, stocks, insurance policies and all real and personal estate of any kind standing in the name of or belonging to my wife, Ma'ry Cecelia McDonnell, or to her credit, now or hereafter, declaring the same to be and to be considered as her separate interest and estate.”
His executors, on the 23d of September, 1882, filed an inventory, which contained, among the other items, the following :
“Four United States bonds at 4 per cent. (1877-1907), registered in the name of Thomas McDonnell and Mary C. McDonnell, or either of them, par val. $2,500, market val. $2,978.”
Their first account was passed on the 22d of June, 1883, and in this the $2,500 of 4 per cents, above described were included as a part of the estate; and they constituted a part of the balance after payment of debts and expenses, which by that account was distributed to “Mary C. McDonnell, widow, for her natural life, according to the terms of will.”
In May, 1883, one month before the passage of this account, Mrs. McDonnell executed her will, in which, after *170 expressing her desire that she should be buried in the manner described in her husband’s will, she proceeded to bequeath portions of her personal estate, by twelve items, to relatives and friends, prefacing these bequests with the statement: “I 'devise and bequeath as follows my estate, which I hold separate and in my own name and right.” From the passing of the first account of Thomas McDonnell until May, 1885, when she died, Mrs. McDonnell continued to hold and receive the interest upon the said $2,500 of 4 per cent, bonds, with that arising from the other portions of her husband’s 'estate so assigned to her for life.
Letters of adminstration c. t. a. upon her estate were granted to F. Marcellus Cox and George E. Hamilton, who have filed the present bill of interpleader.
In'August, 1885, Cox, as the surviving executor of Mrs. McDonnell, under the order of the Orphans’ Court, returned a further inventory of the estate of his testator as the same was left by the life tenant, the widow, at her death; and included therein the $2,500 of 4 per cent, bonds.
On the 18th of September, 1885, Cox and Hamilton, as administrators c. t. a. of Mary McDonnell, applied to the Orphans’ Court for instructions as to whether this $2,500 of bonds should be claimed by them as part of Mrs. McDonnell’s estate; they were directed to return the same as belonging to her; and Cox as surviving executor of Thomas McDonnell, under the direction of the Court, delivered the bonds to the representatives of Mrs. McDonnell.
In the final account thereafter passed by Cox as surviving executor of Thomas McDonnell, he obtained credit for the surrender of these bonds to the wife’s administrators c. t. a.; and the remainder of the estate (which had been diminished to a small extent by the widow during her life tenancy), after deducting the amount of the widow’s funeral expenses, was distributed among the various legatees named in Thomas McDonnell’s will.
The inventory of Mary McDonnell, returned in August, *171 1885, included $2,500 of 4-|- per cent. U. S. bonds; $1,500 of U. S. 4 per cent, bonds; furniture valued at $733.35; $370 in .Treasury notes; and to this amount was subsequently added the appraised value of the $2,500 of 4 per cents so paid over to her administrators by the surviving executor of Thomas McDonnell under the order of the Orphans’ Court.
By the first eleven items of her will she had bequeathed to different beneficiaries many articles of the furniture and plate, the entire $1,500 of her 4 per cent, bonds and $2,300-of the U. S. 4J per cents; leaving undisposed of (unless they pass by the said twelfth clause) the $2,500 of 4 per cents above referred to and $200 of the 4J per cents; and these two amounts of bonds are left undistributed by the first account of her personal estate, to await the decision of the Court.
The Little Sisters of the Poor and Martha A. Serra claim that these bonds pass to them equally, as comprised in the general residuum bequeathed to them by the twelfth item of the will, in these words:
“Item XII. I desire the balance of the furniture, if not already disposed of, sold and the proceeds of sale added to any money that may be on hand to defray the expenses of settling up the estate; if any money should remain ■ after the settlement, I then desire it to be divided between the Institution of the Little Sisters of the Poor and my niece, Martha A. Serra, for her sole use and benefit.”
They insist that the testatrix made use of language in this item adequate to dispose of any description of personalty held by her not previously bequeathed, and that the words “if any money should remain after the settlement, I desire it to be divided,” etc., are sufficient to carry the entire personal estate not previously disposed of, although consisting, not of money in specie, but of Government bonds.
It is well settled that ordinarily a gift of the testator’s “money” or “moneys” does not include stock in the public *172 funds. Hotham vs. Sutton, 15 Ves., 327; Lowe vs. Thomas, 5 De G., M. & G., 315.
In the last case the bequest was of “the whole of my money to A for life; at his death, to be divided between my nieces, O and H; my clothes to be divided between them; my watch to my niece, E. The longest survivor of the above mentioned nieces is to become the possessor of the whole money.” The testatrix had little else than two sums of stock; but it was held it could not pass under this bequest.
But many cases have decided that this restricted signification of the word money will be departed from where it is used in the only residuary bequest, and coupled with the description that it is the money “ remaining ” after the payment of the testator’s debts and legacies or debts. Stocks vs. Barre, 1 Johns. Eng. Ch., 54.
And in the earlier case of Legge vs. Asgill (cited by counsel in Ommanney m Butcher, 1 Turner & R., 265) the same constuction was applied, where the testator had said: “ I believe there will be sufficient money left to pay my funeral expenses;” and in the codicil had provided: “If there is money left unemployed, I desire it to be given in charity;” and the share of the testatrix in a sum held by trustees under a settlement was held to pass to the charity. Lord Eldon’s language in announcing his judgment, it must be conceded, is not calculated to commend its justice, as he prefaces it by saying: “I am obliged to attribute to this testatrix an intention which I am sure she never entertained,” and concludes: “Upon the whole, therefore, I am afraid that this sum is well given to charity.”
But to the rule thus established there are certain admitted exceptions, one of which is announced in the case of Ommanney vs. Butcher, before referred to. There a testator bequeathed several legacies of stock, nominatim; then several amounts in stocks and moneys to different charities; some of his books and some specifics to relatives, and di *173 rected his remaining books and his jewels and furniture to be sold; and appointed his executors, and concluded: “In ease there is any money remaining, I should wish it to be given in private charity.”
It appeared that the clear residue of the testator’s personal estate consisted of a considerable amount in bank stocks, consols and annuities, and of some cash, arising in part from the interest on these securities. The Master of the Rolls decided that these properties did not pass under the residuary clause, upon the consideration of the whole will in connection with the terms of the particular bequests, notwithstanding the words “money remaining.”
Parts of his reasoning seem very applicable to the facts of the case before us. He observes that there, as is the case here, the language of the item is such as would properly be used if only an inconsiderable sum were designed to be disposed of, instead of one-half of the estate. Again, the bequest was spoken of as contingent, as is the case here — “ if any money should remain after the settlement of the estate ” — a point that could not have been at. all doubtful to the testatrix, Mrs. McDonnell, if this very considerable amount of stock had been in her mind, especially as she was aware that all her debts and funeral expenses were to be paid out of her husband’s estate. The Master of the Rolls continues: “Again, the words of the will are, ‘ if there be any money remaining.’ Hotham vs. Sutton has established that money does not by the force of the word include stock. If, then, reason and the nature of the context negative the probability that the testator was adverting to the stock, why is the Court to put a construction upon the word money, which it does not naturally impoit? It is remarkable that up to a certain extent all the dispositions in this will are legacies of stock; the testator, therefore, has distinguished where he meant stock to be the subject of his disposition; and the context shows that in this clause in question he was not adverting to the stock.”
*174 It is still more remarkable that in this item of Mrs. McDonnell’s will, by which it is insisted she bequeathed $2,70Q of United .States bonds, valued at $3,203, the word bond is never used, although in every other case where she designs to dispose of any portion of this class of property, even in so small a sum as $100, she is- particular to employ the word “ bond ” in explicit terms, and to discriminate between the different Government issues; so that the word occurs twelve times in the preceding items. The largest bond legacy specifically given by the will was $1,000; and all the specific legacies of bonds together amount' to $3,800, appraised at $4,425, and one would expect at least an equal precision of expression, when the testatrix came to make a bequest of an amount of bonds, exceeding considerably the half of all she could have claimed to own in any manner.
It is true that in the first item of the will the testatrix, after bequeathing a $1,000 bond and sundry household specifics to a minor niece, expressed the desire that the guardian should “ collect the interest or profits of the money,” and apply it in a certain manner; and this is urged as a proof that she used the terms indifferently, or as a proper description of bonds. But this isolated instance seems to be rather a confusion of language, the result of a blunder in expression, for “the money arising from the interest or profits;” and if such were not the case, it could not prevail against the repeated instances of her deliberate use of the proper word, wherever it afterwards could properly appear throughout the will.
The Master of the Rolls concludes: “My opinion is .that the testator was adverting to that which .he has directed to be converted into money, and that the clause in question does not comprehend the general residue, but must be considered as applying to the residue of the produce of those, articles which the testator has directed to be sold, after providing for the payments he has ordered to be made.”
In the will before us, Mrs. McDonnell, at that time the *175 executrix of her husband with full knowledge that she would have no debts or funeral expenses to be defrayed out of her own estate, and that “the expenses of selling the estate” would be inconsiderable, declares that the balance of the furniture (if not already disposed of) be sold, and the proceeds of that sale should be added to any nioney that may be on hand to defray these expenses. In point of fact, the amount arising from the sale of the furniture, added to the cash money on hand returned by the administrator’s account, exceeded the expenses of settlement by a sum between $30 or $40, after allowing liberal commissions to her administrators c. t. a.
Again, it is not without significance that by the language of this item the one-half to be given to Martha A. Serra is not accompanied by the condition attached to the bequest of $700 of 4J per cent, bonds made to her in the second item, viz.: that it is to be free from all debts and contracts of any husband she may marry, as was declared with respect to the bequests to all her other unmarried female legatees, except where she is dividing a bequest in the event of the death of the original legatee. One would suppose she would have been more particular to insert such a cautionary provision where so large a legacy was to be given than where the sum was insignificant in amount.
We have thus far been considering whether the residuary clause should be construed to include.the entire balance of $2,700 of United States bonds not specifically disposed of. We shall now examine the will to ascertain its proper construction as to the two several amounts of stock composing that balance:
And first, as to the $2,500 of 4 per cents. We have seen that Mrs. McDonnell’s will was executed in May, 1883, one year after her husband’s death; that during that time she had been acting as one of his executors; and as such, with her co-executor, had returned an inventory of his estate, which included the $2,500, describing it as it stood on the *176 Government bond books. It is objected that as Cox alone swore to the correctness of the inventory and first account, their return should not be considered as imputing knowledge of their contents to Mrs. McDonnell. But the inventory and the account appear on their face to be returned by both executors; and with respect to such acts the principle applies that “Co-executors are regarded in law as an individual person and the acts of one, in respect to the administration of the effects, are deemed to be the acts of all, for they have a joint and entire authority over the whole property.” Toller, Executors, 359.
After the filing of the inventory, and before the execution of her will in December, 1882, she joined her co-executor in a petition to the Orphans’ Court, which both signed before the register’, asking for directions as to annuities given by her husband’s'will; and in ten months next after the date of her will the executors passed their first account, in which the $2,500 was included as part of the husband’s estate, and was distributed to her with the other property as life tenant under the will; and she held it as life tenant and drew the income from it until her death, in May, 1885.
No act connected with the administration of Thomas McDonnell’s estate during his wife’s life demonstrates any thought on her part to exercise any authority over the $2,500, otherwise than as tenant for life under the will of her husband; and it was not until after her death that this property appears to have been claimed by any one as belonging properly to her estate.
It was under this apparent understanding on her part of her rights that she executed her will. She evidently was familiar with her husband’s will, as is shown by the provision as to her burial, and she, therefore, knew of the clause by which he waived and released all claim he might have to all bonds or other personal or real estate “standing in the name of or belonging to my wife or to her credit, etc., now and hereafter declaring the same to be considered as *177 her separate interest and estate.” Whether it was under this provision that Mrs. McDonnell claimed as her own the $4,000 of bonds, appraised as her own individual estate, does not appear. Without such a disclaimer, it may be they would have been considered as parts of the husband’s estate. But the disclaimer did not accurately describe the $2,500 of bonds, which did not stand in her name, nor belong to her alone, nor stand to her credit; but were also in his name and to his credit. Nor were they accurately described in her will under the phrase “which I hold separate, and in my own name and right.” . At the time she wrote this will she must be presumed to have known that they were not held by her separately, and in her own name and right, but that she had admitted that they rightfully constituted part of her husband’s estate; and with the power to interpose a claim to the contrary, she continued to hold them as life tenant, as part of the estate her husband had the right to dispose of, without objection by word or deed, her will remaining unaltered, for two years before her death.
When, therefore, she undertook to dispose by her will of property which she held separate and in her own right, and made bequests that came within $200 of- consuming that property, and said nothing to imply that the disposition of the $2,500 -was in her mind; but everything she said tended to demonstrate that she had no purpose-to include it in the distribution she so carefully made; it seems to us clear that, notwithstanding she is to be considered, in the light of subsequent events, as having been entitled to claim the $2,500 at the time she made her will, she evinced no intention to dispose, by the will, of any part of the $2,500, and that as to it, she must be held to have died intestate.
This case is strikingly like that of Stannard vs. Barnum, 51 Md., 450. There the testatrix bequeathed several small legacies to her children; and then declared that, should there be a balance left in the hands of her executor, the said balance should be equally divided between two children *178 named. At the time she owned about $1,000, an installment of an annuity, which constituted all of her estate in possession. After her death it was decided that at the time she made her will she was entitled to an interest in a valuable real property belonging to her husband’s estate, and in which she had, up to her death, disclaimed any interest by answers in certain equity proceedings pending when she died.
The Court of Appeals, while holding it improper to admit extrinsic evidence to show that the testatrix did not know that she owned property which really belonged to her, where the terms of the will were plain, and a residuary clause disposed of the whole estate, yet held that the admitted facts, showing her belief that she was entitled to nothing from the property in litigation, might be relied on as one' among other circumstances demonstrating that she had no intention, when she made her will, to undertake to dispose of any interest in that estate; and they decided that the testatrix diéd intestate of everything except the money from the annuity.
The reasoning there supports our opinion in this case, that Mrs. McDonnell had no intention of disposing of the $2,500, in whole or in part, by any clause of her will, and that this property devolves as an intestacy upon her next of kin.
To this extent the decree of the learned judge below is affirmed.
But we are of the opinion that the surplus of the $200 of 4J per cent, registered bonds stands upon a different principle, and that it must pass under the residuary clause to the claimants here.
Although it is highly probable that the failure to include this amount in some specific bequest was rather accidental than intentional, yet as a matter of legal construction we cannot say that the testatrix manifested a purpose not to dispose of it. She commences her will with the avowal of *179 her intention to devise and bequeath her estate, which she held separate and in her own name and right. She held these bonds in the manner thus described, and the word “estate,” which she employed, is an expression of great comprehensiveness in a will. And there is nothing to negative this presumption appearing in the context and surrounding circumstances, as is the case with respect to the $2,500 of bonds.
Assuming, as we must, that she intended to dispose of this amount of 4J per cent, bonds, as much as of the other 4J per cents standing in the same relation to her when she. wrote her will, we should expect to find words bequeathing them in some portion of the will; and in the absence of any such specific bequest, the residuary clause alone can embrace them. True, they are not the proceeds of the residue of the furniture, nor are they part of the “casual” money to be left in the hands of the executors; but as she had no bonds of any denomination that would make the amount of $200, or of the other small bequests of bonds in the will less than $500, it is evident a sale must have been contemplated; and this would leave in the hands of her. administrators an amount of money representing the $200 of 4J per cent, bonds.
Considering the will as disembarrassed by the claim to the $2,500, and in view of these considerations allowing an expanded definition of the word “money,” we have no difficulty in bringing this case within the principle of Legge vs. Asgill; and this without the compunctions that beset the great chancellor in that case, that we will be violating the intention of the testator by allowing this construction.
We will, therefore, sign a decree affirmmg the decree below, so far as the ‡%,500 is concerned, and reversing it as to the ‡%00 of 4J per cent, registered bonds.