REEVES et al. v. AMERICAN SECURITY
& TRUST CO. et al.

No. 7500.

United States Court of Appeals for the
District of Columbia.

Decided Aug. 5, 1940.

Rehearing Denied Sept. 26, 1940.

Writ of Certiorari Denied Dec. 9, 1940.

See 61 S.Ct. 318, 85 L.Ed. ——.

S. Wallace Dempsey and Bruce Fuller,
both of Washington, D. C., for appellants.

Frederick M. Bradley, Paul E. Lesh,
Richard L. Merrick, Arthur Hellen, Jus-
tin L. Edgerton, John L. Laskey, and
Francis W. Hill, Jr., all of Washington,
D. C. (William Lentz and John E. Roch-
fort, both of Baltimore, Md., on the
brief), for appellees.

Before GRONER, Chief Justice, and
STEPHENS and RUTLEDGE, Associate
Justices.

RUTLEDGE, Associate Justice.

The appeal is from a decision of the
District Court construing the will of John-
son Hellen, deceased, holding that the
proceeds of the sale of certain real prop-
erty should be distributed to the heirs of
the residuary legatees. The heirs of
Frank Hellen, testator's son, appeal, con-
tending that the will gave their ancestor
a vested remainder in the property which
has never been divested.

The testator died January 21, 1867, leav-
ing seven sons and one daughter. His
will, which was in his own handwriting,
disposed of his property substantially as
follows: (1) All his improved and
productive realty, except the home place,
the proceeds from sale of unimproved
realty, and his stocks, bonds and notes
were devised in trust to pay specified an-
nuities to his widow, all of his sons ex-
cept Walter, and two other persons. (2)
Subject to the trust, his realty in Wash-
ington, D. C., was devised in specific life

estates, with alternative remainders, to all of his children except Walter. (3) Various specific gifts were made to testator's wife and his descendants. (4) "The residue of my estate, on the extinction of the trusts, if Walter Hellen, my son, be alive, and has reformed, shall, one half thereof, be paid to him, and the balance shall be divided among such of my other sons, as may then be alive." The residuary clause is the only part of the will in which there is any provision for Walter. The trial court found that "the extinction of the trusts" occurred October 1, 1875, and that Walter at that time had "reformed." These findings are not disputed.

■ While the other annuities and life estates provided in the will were granted outright, those for the testator's son Clifton were made in the nature of spendthrift trusts. The language used in creating the life estate for Clifton in trust and the alternative remainders has caused this litigation. The trust corpus included the property, which may be designated shortly as the 7th Street property, the proceeds from the sale of which are here in issue. The income from the trust res was to be applied to the support of Clifton's family during his life, free of his debts. The disputed provision follows: "After the death of my son Clifton, I devise the lot and warehouse on 7th Street, to his son George for life, if he be then living, remainder in fee, to any eldest son George may have living, at the time of his death, if George dies before his father, without such son, then remainder in fee to my son Frank."

George survived his father and died without issue November 27, 1936. The 7th Street property was sold pursuant to a decree of the lower court in 1922, and during the latter part of George's life the proceeds were held in trust for him. The trustee, American Security and Trust Company, brought this proceeding for construction of the will to determine to whom it should distribute these proceeds after the death of the life tenant. The trial court was faced with three possible groups of beneficiaries: (1) Frank's heirs; (2) the heirs of the residuary legatees; (3) testator's heirs—on the theory that the property was intestate. Only Frank's heirs have appealed formally from the decision holding for the heirs of the residuary legatees. All of the appellees agree that the decision was right in hold-

ing Frank's heirs not entitled to the property, but some of them assert it should go to the heirs of the residuary legatees, while others say it should go as intestate property.

There is no difficulty in this case which could not have been forestalled by application of the fundamental rules of punctuation which the testator doubtless learned in grammar school. The litigation arises out of the testator's fondness for commas and his corresponding aversion to periods. Somewhere in the above-quoted provision a period (or a semi-colon) should have been inserted instead of a comma. The dispute is over where that period belongs. Appellees, heirs of the residuary legatees, contend that it should follow the phrase "at the time of his death." Appellants, Frank's heirs, say that it should follow the clause "if George dies before his father." We set out the respective readings, that their meanings may be the more readily apparent:

Reading by appellees—heirs of the residuary legatees:

"After the death of my son Clifton, I devise the lot * * * to his son George for life, if he be then living, remainder in fee, to any eldest son George may have living, at the time of his death.

"If George dies before his father, without such son, then remainder in fee to my son Frank."

Reading by appellants—Frank's heirs:

"After the death of my son Clifton, I devise the lot * * * to his son George for life, if he be then living, remainder in fee, to any eldest son George may have living, at the time of his death, if George dies before his father.

"Without such son, then remainder in fee to my son Frank."

If appellees' reading is adopted, Frank could become entitled to the property only if George died before his father without a son. If appellants' method of punctuation and interpretation is followed, George's son would be entitled to the remainder only if George died before his father, whereas Frank would receive the property if George died at any time "without such son." Another possible interpretation, under appellants' punctuation, would be that if George should die *after* his father, leaving a son, neither the son nor Frank would receive the property. Appellants' punctuation therefore resolves

one ambiguity only to raise another. We think the trial court rightly accepted appellees' construction of the provision.

The alternative remainder to Frank is clearly contingent. Even under the construction contended for by appellants the remainder is contingent, for the gift would thus read, *"(If George dies) without such son,* then remainder in fee to my son Frank." The condition that George die without a son is clearly made precedent to the vesting of the remainder in Frank.

The question therefore is, What is the contingency on which Frank was to take? Is it that George should die before his father without a son, or simply that he should die without a son? Appellants say that the testator could not have intended the former contingency for under it Frank would have taken had George died before his father, but if he had died without a son one moment after his father Frank would not have taken. It is argued that the testator could not have intended the gift to depend on such a whimsical happenstance. The argument answers itself, for if appellants' construction were to prevail George's eldest son's right to take would have depended on exactly the same quirk of fate. Since the first remainder was to George's son, and since Frank was to take only if there were no such son at the time · the gift was to vest (under either construction of the will), any ambiguity raised by the conflicting theories of punctuation should be resolved in favor of the preferred taker, George's son. The testator clearly did not intend George's son to take at George's death only in case George should die before his father Clifton. Yet that would follow from adoption of appellants' punctuation, and the net result might be to deprive both George's son and Frank of the property if George should die after his father, leaving a son. Appellants do not regard the provision as involving such a possibility, but their punctuation renders such a construction equally tenable with that for which they contend, if not more so. Appellants seek to avoid the force of this argument by pointing out that Frank was the testator's own son, whereas George's son was merely a possible great-grandson. But it is to be noted that testator's apparent testamentary scheme was to divide his property with some degree of equality among his children (except Walter), and to have each child's share go to his eldest son in fee if there were any eldest son. The alternative remainders to testator's other sons, which obviously would destroy the equality of the division, were in all cases to take effect only if there were no eldest sons. In the other gifts it is perfectly plain that the only requirement was that the son be alive at his parent's death.[1] The natural interpretation of the gift here in question is the same, and in view of the testamentary scheme there seems to be no compelling reason for straining the interpretation to conform with appellants' theory.

We are confirmed in our conclusion that the period should be placed at the earlier point in the devise by the fact that the testator used substantially the same form of words in creating the other life estates, and in those gifts there can be no question that the period should follow the phrase "at the time of his death" and precede the succeeding "if" clause.[2] The testator evidently departed from his general formula in the instant devise only for the purpose of creating the additional condition of which appellants complain.

Appellants invoke numerous inapplicable rules of testamentary construction to show that the clause "if George dies before his father" has an effect different from that given it by the trial court. They contend that the clause must be attached as a condition to the gift to the great-grandson since otherwise that gift would violate the rule against perpetuities. But obviously the gift must vest immediately upon the death of George who is a "life in being," hence does not run counter to the rule. Appellants say that the clause is an "isolated expression" and therefore should not be allowed to control the construction of the gift.[3] But the very fact that this clause is the only de-

---

[1] The gift to Eugene is typical: "I device [sic] unto my son Eugene Hellen, for life, the part of lot one, in Square four hundred and eighty nine, next to my residence * * * remainder in fee to any eldest son, he may have living at his death, if no such son living, then remainder in fee to my son Joseph Hellen."

[2] See note 1 supra.

[3] Citing Evans v. Ockershausen, 1938, 69 App.D.C. 285, 100 F.2d 695, 128 A.L. R. 177.

parture from the formula used by the testator in creating life estates indicates that it is not inadvertent, but rather that it expresses his deliberated intent. Other contentions need not be discussed for the reason that they are variants of assumptions rejected elsewhere in this opinion.

As an alternative to their main argument, appellants suggest that the devise should be construed to read as follows: "if George dies before his father *or* without such son, then remainder in fee to my son Frank." Assuming without deciding that "or" could be substituted for the comma (or for the "and" which appellants say the trial court inserted) if such substitution would effectuate the testator's intent, we think his intent as evidenced by his words is to the contrary. This construction of the will would mean that if George died before his father, Frank would take even though George left a son. As previously noted, George's son was the preferred beneficiary not only because he was named first in the devise and was to take to the exclusion of Frank if living at the time designated for vesting, but also because it was clearly the testator's scheme to have the eldest sons of the life beneficiaries take the various properties in fee if they were living at their parents' death. Insertion of the word "or" in the devise would there-fore be in plain contravention of testator's plan of disposition.

Appellants argue that we should adopt their construction of the devise for the reason that otherwise the property will pass by intestacy. We need not decide whether the threat of intestacy would be sufficient to cause us to revise testator's will or warp its construction to suit appellants, for we think the trial court was clearly right in holding that the property fell into the residue. This is not the case of a lapsed or void devise, and we therefore need not decide whether as such it would become intestate.[4] It is sufficient to observe that the reversionary interest in the property, which would take effect immediately upon failure of the contingent remainders, was nowhere disposed of in the will and thus there was no gift of it to lapse or be invalid. It was this reversion which passed to the residuaries. It is settled that a residuary clause will include such a reversion.[5] It is contended that the instant residuary clause cannot be effective to pass an interest in real property because it uses the words "paid" and "balance," which normally relate to money. But where a testator's intention to dispose of all his estate is evident, as it is here, the language of the residuary clause is not required to be aptly descriptive of the precise character of all the interests intended to pass under it.[6] Fur-

---

4 Cf. George Washington University v. Riggs National Bank, 1936, 66 App.D. C. 389, 88 F.2d 771; D.C.Code, 1929, tit. 29, § 30.

5 Craig v. Rowland, 1897, 10 App.D.C. 402: "It is a settled principle that wherever there is an executory devise or a contingent remainder of real estate, and the freehold or inheritance is not in the meantime disposed of, the freehold or inheritance descends to the testator's heirs-at-law, to abide the event upon which the contingency may terminate. Purefoy v. Rogers, 2 Wm.Saund. 382, and note (1); Carter v. Barnardiston, 1 P.Will. 516, 517; Gore v. Gore, 3 P. Wms. 28; Stephens v. Stephens, Cas. Temp.Talb. 228; Fearne, Cont.Rem. and Ex.Dev. 537–543. The cases all seem to agree that a residuary devise, such as we have in the will before us, will include every reversionary interest, however remote, which is undisposed of by the provisions of the will, whether the same be a reversion remaining after an interest created by the will or otherwise. Brigham v. Shattuck, 10 Pick. [Mass.,

306] 308; Harper v. Blean, 3 Watts [Pa.], 471 [27 Am.Dec. 367]; Youngs v. Youngs, 45 N.Y. [254] 258." 10 App. D.C. at pages 413, 414.

This statement is supported by the authorities cited and appears to be in accordance with the generally prevailing law. Clement v. Whittaker, 3 Cir., 1916, 231 F. 940, certiorari denied, 1916, 241 U.S. 679, 36 S.Ct. 727, 60 L.Ed. 1233; De Vaughn v. Greer, 1916, 144 Ga. 743, 87 S.E. 1022; Hartwick v. Heberling, 1936, 364 Ill. 523, 4 N.E.2d 965; Foil v. Newsome, 1905, 138 N.C. 115, 50 S.E. 597, 3 Ann.Cas. 417; cf. Coquillard v. Coquillard, 1916, 62 Ind.App. 489, 113 N.E. 481.

6 Given v. Hilton, 1877, 95 U.S. 591, 24 L.Ed. 458; Hamilton v. Serra, 1887, 6 Mackey 168, 17 D.C. 168. Furthermore, although the testator was a lawyer, appellants devote a very considerable portion of their brief to showing that he "was far from accurate in the use of language, and was inexact and cumbersome in drafting provisions" throughout the will. They do not include the residuary

thermore, it may be that the testator had in mind the *probability that division of* the residue among the various beneficiaries would entail sale of any realty contained in it and payment in money to Walter and the others.

The alternative argument that testator would have preferred that the remainder go to Frank rather than to the residuary legatees is not persuasive. We have no way of knowing testator's preferences except as he expressed them in his will. We know from the will that he preferred George's son to Frank with regard to this remainder, and we know that he wanted Frank to take on specified contingencies. We do not know whether he would have liked to give the remainder to Frank in the event of other contingencies which he did not specify. He created a residuary clause among these, but it seems inconsistent to urge that he was meticulously accurate concerning this clause, but glaringly inaccurate concerning so many others.

clause to dispose of the property not otherwise disposed of in the will. This remainder, in the light of subsequent events, was not otherwise disposed of, and the property therefore falls into the residue. Nor does the fact that Walter was entitled to half of the residue militate against this conclusion. The share in the residue was the only provision for Walter, and it was conditioned on his reformation. The rest was to go to the testator's other living sons, of whom, as it happened, Frank was one. Frank was otherwise amply provided for in the will. We cannot say, contrary to his expressed wish, that the testator would have preferred to give this additional property to Frank rather than have half of it go to the reformed Walter and half to his other living sons.

The decree is affirmed.