**DISTRICT OF COLUMBIA v. CLARK et al.**

No. 9522.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 1, 1947.

Decided Nov. 1, 1948.

Mr. George C. Updegraff, Assistant Corporation Counsel, District of Columbia, with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, District of Columbia, who entered appearances, were on the brief, for petitioner.

Mr. Merle Thorpe, Jr., with whom Messrs. Nelson T. Hartson and James C.

822

Rogers, who entered appearances, were on the brief, for respondents.

Before STEPHENS, CLARK and WILBUR K. MILLER, Associate Justices.

STEPHENS, Associate Justice.

■ This is a proceeding brought by the District of Columbia to review a decision of the Board of Tax Appeals of the District, hereafter referred to as the Board. The Tax Assessor of the District assessed an inheritance tax in the sum of $9,609.60 upon future interests created by the will of Harry F. Clark, deceased; the assessment was made upon them as contingent interests. Upon the theory that the interests were vested, rather than contingent, the executors under the will (Elise H. Clark, the widow, and the Riggs National Bank), respondents herein, paid the tax under protest and filed a petition with the Board for a refund of $3,741.62. The Board ruled that the interests in question were vested and that the tax should therefore be reduced. It is not in dispute that refund in the amount claimed is allowable if the future interests were vested. Whether they were vested or contingent is the sole question in the case. The critical date for the determination of the character of the interests is the date of the decedent's death. D.C.Code(1940) § 47—1607 provides that "the donee of the future interest shall pay a tax only on his interest as based upon the value thereof at the time of the death of the decedent creating such interest."

The facts appear from the findings of the Board and are not in dispute: By his will the decedent Clark bequeathed the residue of his estate to the respondents, as trustees, in trust for the benefit of his widow during her life and widowhood. He further provided in his will:

Upon the death or remarriage of my said wife, whichever shall first occur, her interest in this trust estate shall cease and determine, and thereupon, or, if my said wife shall not survive me, then at my death, The Riggs National Bank of Washington, D. C., as the sole trustee, shall divide the entire trust estate into as many equal shares as there may be children of mine then living, and the then surviving issue collectively of any child of mine then deceased. My trustee shall assign one equal share respectively to each living child of mine and to the then surviving issue of a deceased child.

In respect to the shares of living children of mine who shall have attained the age of thirty-seven (37) years, and the collective issue of a deceased child, the trustee shall thereupon convey, transfer, assign, pay over, and deliver unto them, their respective shares, per stirpes as to issue.

In respect, however, to a share for a living child who shall be under the age of thirty-seven (37) years, my trustee shall hold the same in trust, with all the powers hereinbefore conferred upon it, and shall pay the net income to such child, in such instalments as may be practicable, until such child attains the age of thirty-seven (37) years, or dies under that age, as the case may be. If such child lives to attain the age of thirty-seven (37) years, then at the time such age is attained, the trusts herein declared shall terminate as to such share, and the principal of such share, with all undistributed accumulations of net income, shall be conveyed, transferred, assigned, paid over, and delivered unto such child, in fee simple and absolutely. In the event, however, a child for whom a trust is then subsisting shall die before attaining the age of thirty-seven (37) years, the trust as to his or her share shall likewise terminate at his or her death, whereupon the trustee shall convey, transfer, assign, pay over, and deliver the principal of such share, and all undistributed accumulations of net income in its hands, including income accrued to the date of such child's death but not actually collected, unto such child's then surviving lineal descendants, who shall take equally, share and share alike, per stirpes and not per capita, and in default of any such, then to my then surviving lineal descendants, who shall take equally, share and share alike, per stirpes, provided, however, the share, on any such redivision, of a child of mine for whom a trust shall be subsisting under this my last will and testament, shall be added to such trust and shall not be paid over to such child except as in respect to such trust provided.

In the event my issue shall fail absolutely before absolute distribution of the property of the trust estate as hereinbefore provided, I direct that if such failure shall occur prior to the death or remarriage of my wife, Elise Heiskell Clark, then upon such death or remarriage, whichever event shall first occur, or if such absolute failure shall occur after her death or remarriage, then upon complete failure of my issue, the trusts herein declared shall cease and determine, and any property and estate in the hands of my trustee shall be conveyed, transferred, assigned, paid over, and delivered, in fee simple and absolutely, to the then living persons who shall be my heirs-at-law and next-of-kin, heirs-at-law to take realty and next-of-kin to take personalty. The identity and proportionate shares of heirs-at-

law shall be determined in accordance with the Statutes of Descent then in force in the jurisdictions where any real estate of the trust estate may be located. The identity and proportionate shares of next-of-kin shall be determined according to the Statute of Intestate Distribution of Personalty then in force in the District of Columbia; PROVIDED, HOWEVER, heirs-at-law and next-of-kin shall be determined as though I had died unmarried and without issue.

In respect to a share in trust for any child of mine so long as such child shall be under the age of thirty-seven (37) years, my trustee, in the exercise of a sole and uncontrolled discretion, may pay to such child, or itself apply such sum or sums from the principal of such child's share as it may deem necessary or desirable, for such child's education and other benefit, and to discharge any legal or moral obligation of such child as the head of a family.

The decedent was survived by his wife Elise (executor, trustee and respondent as above appears) and by two sons, James Monroe and Henry Lee, who at the time of the decedent's death were aged 31 and 29, respectively. It is the vested or contingent character of the future interests of these sons at the time of the decedent's death which is in question in the case. The following provisions of the District of Columbia Code (1940) are pertinent, or are by the parties to this proceeding asserted to be pertinent:

§ 45—810 [25:270]. Future estates.

A future estate is one limited to commence at a future day, either without the intervention of a precedent estate or after the expiration or determination of a precedent estate created at the same time and by the same conveyance or device. (Mar. 3, 1901, 31 Stat. 1351, ch. 854, § 1020.)

§ 45—811 [25:271]. Remainder and conditional limitation.

If it is to commence upon the full expiration of such precedent estate, it is a remainder and may be transferred by that name. If it is to commence on a contingency which, if it happen, will abridge or determine such precedent estate before its expiration, it shall be known as a conditional limitation. (Mar. 3, 1901, 31 Stat. 1351, ch. 854, § 1021.)

§ 45—812 [25:272]. Vested and contingent future estates.

A future estate is vested when there is a person in being who would have an immediate right to the possession of the land upon the expiration of the intermediate or precedent estate, or upon the arrival of a certain period or event when it is to commence in possession. It is contingent when the person to whom or the event upon which it is limited to take effect in possession or become a vested estate is uncertain. (Mar. 3, 1901, 31 Stat. 1351, ch. 854, § 1022.)

§ 45—813 [25:273]. Alternative future estates.

Two or more future estates may be created to take effect in the alternative, so that if the first in order shall fail to vest the next in succession may be substituted for it and take effect accordingly. (Mar. 3, 1901, 31 Stat. 1352, ch. 854, § 1026.)

We think that the ruling of the Board that the future interests of the decedent's sons James Monroe and Henry Lee were at the time of the death of the decedent vested, not contingent, is correct. Creation of the future interests of the sons is in the language of the first paragraph of that portion of the will above printed. Thereby the surviving children of the decedent and the surviving issue of any deceased child are made the beneficiaries of a trust. The remaining paragraphs provide for the time and manner of distribution of the equitable shares thus created and for their divestiture under named conditions. There may be vested remainders in equitable estates as well as in legal estates. Fields v. Gwynn, 1901, 19 App.D.C. 99, discussed below in another context. See also Gray, The Rule against Perpetuities (4th ed. 1942) § 116; 1 Simes, Future Interests (1936) § 96.

In two cases decided by this court provisions substantially paralleling the one in question in the instant case have been held to create vested interests. In Craig v. Rowland, 1897, 10 App.D.C. 402, one Wilson devised lands to his sister, Mrs. Burgess, and her son, John E. Craig, as joint tenants during their joint lives and the life of the survivor of them. Wilson's will further provided: "if the said John E. Craig shall hereafter marry and die, leaving lawful issue of such marriage or marriages, or the lawful descendants of such children, and such lawful issue, or their lawful children shall be in being at the time of the death of the survivor of the said John E. Craig and Henrietta Burgess, then I give, bequeath and devise to such issue and children, the said lands and premises to them, and their heirs in fee simple, but if the said John E. Craig shall die without having been married, and without leaving such lawful issue surviving him, then the said lands and premises to go to my right heirs." The

will made another sister of Wilson, Mrs. Burche, residuary legatee. Wilson died in 1841, his two sisters, who were his only heirs at law, surviving him. Mrs. Burgess died intestate in 1843, John E. Craig, her only heir at law, surviving her. Craig married in 1847 and died in 1874, survived by several children. In 1848, shortly before the birth of Craig's first child, Mrs. Burche conveyed to Craig all of her interest in the lands devised to Craig and his mother, Mrs. Burgess. Thereafter Craig and his wife conveyed the same lands to one Laughlin and by mesne conveyances these lands came into the possession of Rowland, the respondent in the case. After the death of Craig his children brought an action in ejectment against Rowland. At the trial Rowland contended that the effect of the conveyance from Mrs. Burgess to Craig was to merge the life estate, then in Craig alone, into the estate of inheritance conveyed by her, and that the remainders in Craig's children, being contingent, were, under a rule then prevailing, destroyed. The trial court so held. But on appeal Rowland's contention was rejected upon the ground that the remainders in the children were not contingent but vested. This court pointed out that "a child en ventre sa mere is deemed to be in esse, for the purpose of taking a remainder, or any other estate or interest which is for his benefit," and that the eldest child of Craig "being in esse and capable of taking the estate, if the estate in remainder vested upon coming into being of the children of John E. Craig, the estate had been changed from a contingent into a vested remainder, before the execution of the deed by Mrs. Burche; and hence was in no manner affected by that deed." (10 App.D.C. at 415) It was further argued, however, for Rowland "that the period for the vesting of the estate in remainder was not the coming into existence of a child or children of John E. Craig, but the death of the latter, leaving issue or children, or their descendants, surviving him." (Id.) But the court reasoned and ruled:

...we perceive nothing in the terms of the devise in remainder that requires such construction. The devise should be so construed as to vest the estate at the earliest possible moment, without violation of the manifest intention of the testator. In this case there is nothing on the face of the will to indicate an intention or purpose on the part of the testator to delay the vesting of the estate in remainder to the time of the termination of the life estate. And in the absence of such plain indication, the rule of construction is, that the estate should be held as vested from the earliest period possible.

＊     ＊     ＊

It is laid down in all the books of authority that the distinction between a vested and a contingent remainder does not depend on the contingency on which it is to vest in possession, but on that on which it is to vest in interest. Hence, Mr. Fearne (Cont.Rem. 215, 216, 217), lays it down as an unquestionable proposition, "that it is not the uncertainty of ever taking effect in possession that makes a remainder contingent; for to that, every remainder for life or in tail is and must be liable; as the remainderman may die, or die without issue, before the death of the tenant for life. *The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent.*"

In this case, the question is, whether the remainder to the issue or children, or their descendants, of John E. Craig was contingent until the death of John E. Craig, the devisee for life, or vested on the birth or coming into being, so as to enable it to take, of one of such children, with a liability to open and let in any after born child or children, embraced by the devise in remainder. This question would seem to be of easy solution, upon the principles we have stated. *There being no condition precedent or clearly expressed intention in the devise to prevent the vesting of the estate in the child or children as they came into being, it follows, upon well settled principles, that the remainder limited to the children, or their descendants, of John E. Craig, became a vested remainder in fee in the first child born or that came into being and capable to take, and did not wait for the death of the father; and this remainder thus vested was subject to open and let in the after born children.* And if such child or children and their descendants had all died in the lifetime of John E. Craig, the fee simple estate would have reverted to the heirs of the testator, and formed part of the residue of his estate, and passed under the residuary clause of his will. Doe v. Considine, supra [U.S.1867, 6 Wall. 458, 18 L.Ed. 839]; Doe v. Perryne, 3 T.Rep. 484, opinion of Buller, J.; Right v. Creber, 5 B. & Cr. 866; Doe v. Hopkinson, 5 Q. B. 223; Carver v. Jackson, 4 Pet. 1, 90 [7 L.Ed. 761].

The estate limited in remainder having been changed or converted from a contingent into a vested remainder, upon coming into being of the first child of the devisee for life, which

happened before the execution of the deed of bargain and sale by Mrs. Burche to the devisee for life, it follows that the estate limited in remainder was in no manner affected by such deed. And as to the deed subsequently made by the devisee for life to Samuel H. Laughlin, that did not affect the estate in remainder, though it professed to convey the estate in fee; but only conveyed such estate as the grantor could lawfully convey, and that was a life estate in the premises.

It follows that the instruction of the court below, directing a verdict for the defendant, was erroneous; and therefore the judgment must be reversed, and a new trial awarded, and it is so ordered. [Italics supplied] [10 App.D.C. at 415-419]

■ In Fields v. Gwynn, cited above, William G. H. Newman and his wife conveyed lands to a trustee in trust for their daughter, Ella P. Gwynn, for life "and if the said Ella P. Gwynn shall have issue living at the time of her death, then the said party of the second part [the trustee], shall hold the said described real estate and premises, in trust, to and for the use of the said issue and their heirs as tenants in common, but if the said Ella P. Gwynn shall have no issue living at the time of her death, then the said party of the second part, shall hold the said described real estate and premises, in trust, to and for the use of the said William G. H. Newman, party of the first part, his heirs and assigns." The conveyance provided also that "the said Ella P. Gwynn shall nevertheless have no powers to alienate, transfer, sell or encumber the said described real estate and premises, nor to dispose of the same by deed or will nor by any mode of alienation or anticipation." (19 App.D.C. at 101) Ella P. Gwynn nevertheless by deed of trust to secure the payment of a note to Ullman Goldsborough Company conveyed the lands in trust to Thomas M. Fields and Moses R. Walter. Her children then living, including one minor, joined in this encumbrance. Thereafter, the note falling due and remaining unpaid, a bill was filed to foreclose the encumbrance, praying for a special account for the amount due, for foreclosure of the trust deed, for the appointment of trustees to sell the premises, for the appointment of a guardian *ad litem* for the infant defendant, and for a deficiency decree. A demurrer to the bill was sustained by the trial court upon the ground, apparently, that Ella P. Gwynn could not encumber the property and that the children who joined in the encumbrance had only a contingent interest. On appeal this court said, citing authorities, that in respect of determining whether or not a remainder is contingent or vested certain general rules of construction have been established, to wit: 1. Estates shall be held to vest at the earliest possible period unless there is a clear manifestation of intent to the contrary. 2. A remainder will not be construed to be contingent when it can be taken to be vested. 3. Adverbs of time, as after, etc., are to be construed to relate to the time of the enjoyment of the estate and not to the time of vesting in interest. The court then said:

According to those authorities, also, and by general agreement, a vested remainder is one in which a present interest passes to the grantee, though to be enjoyed in the future, and is fixed to remain to a determinate person after the particular estate is ended. The remainder passes out of the grantor at the creation of the particular estate and vests in the grantee an immediate, fixed right of future enjoyment.

A remainder is contingent when limited to an uncertain person, or upon the happening of an uncertain event, that is to say, when limited to a person not in being, or not ascertained, or limited to take effect upon an event which may never happen, or which may not happen until after the preceding particular estate is ended.

Applying the foregoing tests, we are of opinion that the deed of settlement operated to create a vested remainder in the issue of Ella P. Gwynn, who were then living, subject to be opened to let in any child that might be born to her afterwards. And this conclusion would not be affected by any determination of the questions, if such should become necessary, whether by "issue living at her death," are meant the children of Ella P. Gwynn, as a class, or whether "issue" includes the children of a child who may pre-decease the life tenant.

The character of the first limitation in remainder would not be affected by a determination that the settlor meant the children as a class, and that the estate shall pass under the succeeding limitation in the event that no one of them should survive their mother, any more than by a conclusion, that, upon the death of a child, its issue would take the parents' share, or would share equally with surviving children of the life tenant.

No children have been born to Ella P. Gwynn since the settlement was made; none have died, and all are parties to the suit.

*The character of the estate created in them*

*must be tested by their present capacity to take should the life estate be suddenly terminated. That they may not survive the life tenant and, therefore, never come into the enjoyment of the estate, is immaterial. It is not the uncertainty of the enjoyment, but the uncertainty of the right that distinguishes the contingent from the vested remainder.*

The limitation in remainder is to persons in being and of certain ascertainment. The limitation of the preceding life estate is an event that must certainly happen in the ordinary course of nature, and that may, and most probably will, happen before the death of her issue or the survivor of them.

Upon the sudden termination of the preceding estate they would at once come into the enjoyment of the remainder. [Italics supplied] [19 App.D.C. at 113–114]

The court thus concluded that the demurrer had been improperly sustained so far as concerned the ruling that the interests of the children of Ella P. Gwynn were contingent. It, however, found the bill multifarious and upon that ground declined to reverse the decree sustaining the demurrer.

D.C.Code (1940) § 45—812 is consistent with the rulings in Craig v. Rowland and Fields v. Gwynn. As above appears its definition of a vested future interest is:

A future estate is vested when there is a person in being who would have an immediate right to the possession of the land upon the expiration of the intermediate or precedent estate, or upon the arrival of a certain period or event when it is to commence in possession....

Applying this to the portion of the will of the decedent in the instant case which created the future interests in his sons, those interests are seen to be vested, since there were at the time of the decedent's death (which is, as pointed out, the critical date in the instant case) persons in being—the sons—who would have an immediate right to possession of the beneficial interest under the trust should the precedent estate of Elise H. Clark have then expired.[1] It is true that the legal estate was not to pass

until the sons respectively reached the age of 37, and that they were not of that age at the time of the decedent's death. But it is clear that they would upon the termination of the life estate have come into the possession of their equitable rights—in the language of Fields v. Gwynn they had a "present capacity to take should the life estate be suddenly terminated." Upon the death of Elise H. Clark the remaining trustee was to assign to each of the sons one equal share of the trust estate, and was to pay to each until he reached the age of 37 the net income of such share; and the trustee, in his discretion, could draw upon the principal for the education and other benefit of the sons.

■ The District of Columbia relies upon Reeves v. American Security and Trust Co., 1940, 72 App.D.C. 403, 115 F.2d 145, certiorari denied, 1941, 311 U.S. 710, 61 S.Ct. 318, 85 L.Ed. 461, and Breneman v. Herdman, 1910, 35 App.D.C. 27. In the Reeves case, a suit to construe a will, the will provided: "After the death of my son Clifton, I devise the lot and warehouse on 7th Street, to his son George for life, if he be then living, remainder in fee, to any eldest son George may have living, at the time of his death, if George dies before his father, without such son, then remainder in fee to my son Frank." (72 App.D.C. at 404, 115 F.2d at 146) George survived his father, Clifton, and himself died November 27, 1936. Frank had died in 1906. The property referred to had been sold pursuant to a decree in 1922 and during the latter part of George's life the proceeds were held in trust for him. The trustee, American Security and Trust Company, brought a proceeding for construction of the will to determine to whom it should distribute the proceeds after the death of George. The trial court was faced with three possible groups of beneficiaries:

---

[1] It is of interest to note that the New York statute parallels the local statute and that the decisions of the New York courts under the New York statute parallel the local decisions. N. Y. Real Property Law § 40 provides: "A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain." And see In re Elting's Will, 1944, 268 App.Div. 74, 48 N.Y.S.2d 892, affirmed, 1945, 294 N.Y. 941, 63 N.E.2d 123; Moore v. Littel, 1869, 41 N.Y. 66; Gray, The Rule against Perpetuities (4th ed. 1942) § 106.

Frank's heirs; the heirs of the residuary legatees; and the heirs of the testator—the latter claiming upon the theory that the property passed as intestate property. The trial court decided in favor of the heirs of the residuary legatees. Only Frank's heirs appealed from that decision. The sole question in the case was one of punctuation of the provision. As said by the court: "Somewhere in the above-quoted provision a period (or a semi-colon) should have been inserted instead of a comma. The dispute is over where that period belongs." (72 App.D.C. at 404, 115 F.2d at 146) The reading urged by appellants, Frank's heirs, was: "After the death of my son Clifton, I devise the lot * * * to his son George for life, if he be then living, remainder in fee, to any eldest son George may have living, at the time of his death, if George dies before his father. Without such son, then remainder in fee to my son Frank." The reading urged by the appellees was: "After the death of my son Clifton, I devise the lot * * * to his son George for life, if he be then living, remainder in fee, to any eldest son George may have living, at the time of his death. If George dies before his father, without such son, then remainder in fee to my son Frank." (Id.) This court, affirming the trial court, adopted the reading urged by the appellees. It is true that in the course of the decision the court said that the alternative remainder to Frank was, under the construction contended for by the appellants, contingent because "The condition that George die without a son is clearly made precedent to the vesting of the remainder in Frank." (72 App.D.C. at 405, 115 F.2d at 147) But since the court held that under a proper construction of the provision the meaning of which was in dispute Frank was entitled to no remainder at all, the remark of the court as to the character of the remainder was a dictum. Moreover the remark was apparently made in the light of the common law test as to the character of future estates, not in the light of the test laid down by the local statute and Craig v. Rowland and Fields v. Gwynn above discussed. The court mentioned Craig v. Rowland, but in another context; it did not refer to Fields v. Gwynn.[2]

In the Breneman case a testator devised lands in trust for his daughter, Marion V. Breneman, for life and then "in trust for any child or children she may have at the time of her decease surviving her, until such child or children respectively attain the age of twenty-one years, when the same shall be conveyed by my said executors, or the survivor of them, to such child or to such children, in equal proportions or shares, and his or their heirs; and if my said daughter leave no child, or if, leaving a child or children, it or they die before attaining the age of twenty-one years, unmarried and without leaving a child or children begotten in lawful wedlock, then at the death of the last surviving child of my said daughter, under age and unmarried and without issue as aforesaid, the said property shall be conveyed by my said executors, or the survivor of them, in equal proportions or shares, to such of my other children as may be then living. . . . ." (35 App.D.C. at 30) A son of Marion V. Breneman, one William W. Breneman, an appellant in the case, while indebted to the appellee, Herdman, transferred his interest under the will to his sister. At the time of the transfer Breneman had reached the age of 21 and his mother was still living. Action was brought by Herdman to vacate the transfer as colorable only and made for the purpose of defrauding Breneman's creditors, including Herdman. Breneman defended in part upon the ground that the interest was transferred for fair value, and he apparently

[2] Under the common law "Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to, the remainder-man, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested. Thus on a devise to A. for life, remainder to his children, but if any child dies in the lifetime of A. his share to go to those who survive, the share of each child is vested, subject to be divested by its death. But on a devise to A. for life, remainder to such of his children as survive him, the remainder is contingent." Gray, The Rule against Perpetuities (4th ed. 1942) § 108.

based this defense upon the contention that his interest was contingent, not vested. The trial court held that it was vested, and this court affirmed. It said: "The learned trial justice in construing said will ruled: 'That when the two children arrived at the age of twenty-one years, their interests became vested, and were no longer contingent on surviving their mother;' that 'their right to possession, however, did not begin until their mother's death;' that, at the date of said conveyance to his sister, William W. Breneman had a vested title to an undivided interest in said property, subject to his mother's life estate therein. We concur in this construction of the will." (35 App.D.C. at 35) The primary subject of the court's discussion in the case and of its ruling was the issue of fraud. But since his mother was still living at the time of the conveyance the case necessarily rules that the condition of survivorship in the devise did not make Breneman's remainder contingent and in this ruling the case supports the position of the Board and the respondents in the instant case. The District of Columbia relies upon the case because of the statement that when the two children reached the age of 21 their interests became vested, urging that in accordance with this the interests of the sons of the decedent in the instant case would not vest until they respectively reached the age of 37. But since Breneman had attained the age of 21 at the time he made the transfer to his sister, the case does not actually rule upon the question what effect postponement of final distribution of the legal estate had upon the character of the remainder. The statement on that subject is a dictum and not properly to be followed.

Affirmed.